CITY OF MERIDIAN *v*. CROOK.

[69 South. 182.]

1. MUNICIPAL CORPORATION. *Sidewalks. Duty to maintain. Streets. Accidents. Burden of proof. Negligence.*

Municipalities are only required to exercise ordinary care to keep and maintain their streets and sidewalks in a reasonably safe condition for the use of persons exercising ordinary care and caution.

2. Municipal Corporations. *Sidewalks. Accidents. Burden of proof.*

In a suit by a traveler against a municpality for injury caused by a defective sidewalk, the burden of proof is on the plaintiff to show negligence on the part of the municipality in constructing or maintaining such sidewalk.

3. Municipal Corporations. *Streets. Negligence.*

The fact that the bricks in a sidewalk of a municipality become loose and some of them were missing, leaving a depression about three inches in depth, does not show such negligence on the part of a municipality as would warrant a recovery by a pedestrian, who tripped and fell in stepping into such depression.

Appeal from the circuit court of Landerdale county. Hon. J. L. Buckley, Judge.

Suit by Mrs. L. Crook against the City of Meridian. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Amis & Dunn,* for appellant.

As we understand it, the measure of duty on the part of the city with reference to its highways, is to exercise ordinary care in keeping its streets in a reasonably safe condition for use by persons exercising ordinary care and prudence in passing over them. "28th Cyc. 1358, *et seq: Vicksburg* v. *Hennessy,* 54 Miss. 391; *Nesbitt* v. *Greenville,* 69 Miss. 22; *Butler* v. *Oxford,* 69 Miss. 618; *Walker* v. *Vicksburg,* 71 Miss. 899; *Union* v. *Heflin,* 61 So. 652." See, also, exhaustive note to case of *Elam* v. *Mt. Sterling,* 20 L. R. A. (New Series) at page 577, *et seq.*

It will be noted that the city is not an insurer against injury; nor is it liable for every accident that occurs in its streets. The degree of care required of a city is ordinary care and diligence, while the test of legal liability as to the condition of the street is, that it must be kept in a reasonably safe condition for use by

persons exercising ordinary care in passing over them. Absolute safety of condition is not required; neither is reasonable safety of condition required, except when used in an ordinarily careful manner. In other words, the safety of condition is measured and modified by the matter of use. A condition that would be reasonably or even absolutely safe for use, by a prudent or careful traveler, would be dangerous for one who is reckless or careless; and so the duty of the city as to the condition in which it must keep its streets is, of necessity, modified and measured by the manner of the use thereof; and the courts have uniformly held that the condition of the street must be reasonably safe when used in an ordinarily prudent and careful manner. See authorities, *supra.*

If the foregoing be a statement of the law, then the granting of instruction number one for the plaintiff was error; because it excluded from the jury all the testimony of the plaintiff as to the manner of her use of the streets while passing over it at the time of her injury. In other words, the duty of the city is fulfilled, and it is not liable, even though the accident did happen, if the sidewalk was in a reasonably safe condition for use by a person exercising ordinary care in passing over it; and that was exactly the defense which the city sought to make. All the testimony of all the witnesses, both for plaintiff and defendant (except that of the plaintiff herself), showed, and tended to show, that the sidewalk in question was in a reasonably safe condition for use by a person exercising ordinary care in passing over it; and if that were true then the city is not liable even though the plaintiff did fall and was injured thereby.

It is true that no plea of contributory negligence was filed, and that contributory negligence is an affirmative defense which must be pleaded if the defendant desires to offer such proof. But then it is not necessary to

plead it, when it is shown by the plaintiff's testimony, for the reason that, if at the time the plaintiff proves his cause of action he also proves a defense to it, no court would, for an instant, further entertain his claim or give judgment in his favor. *Simms* v. *Forbes,* 86 Miss. 421; *Meyer* v. *King,* 72 Miss. 1; *Bowie* v. *Railway Co.,* 69 Miss. 196. We therefore submit that the granting of instruction number one for the plaintiff was such a fatal and harmful error as to require a reversal of the case.

The second instruction for plaintiff is also fatally erroneous. By this instruction the court charges the jury that even though they may believe from the evidence that there was no hole in the sidewalk, other than misplaced brick, yet if they further believe from the evidence that the sidewalk was unsafe for use, in its then condition, and that plaintiff by reason thereof was injured while exercising ordinary care, then the defendant is liable. The glaring errors in this instruction consists in telling the jury that if they believe from the evidence that the only defect in the sidewalk was misplaced brick, and if they further believe from the evidence that it was unsafe for use and that plaintiff was injured while exercising ordinary care, etc., then the defendant is liable.

In the first place there is no evidence in the record that the misplaced brick in the sidewalk rendered it unsafe. The only evidence of its unsafety is the fact of plaintiff's injury, which of itself is no proof of it, unless all other causal agencies be excluded, as was done by instruction number one for the plaintiff. But by taking instructions number one and number two together, it was equivalent to telling the jury that the defect caused the injury; and that therefore the sidewalk was dangerous or unsafe as a matter fact. In the second place, the word "unsafe" as used in the instruction is without qualification. All that is required of the jury as to

the condition of the sidewalk, in order to return a verdict for the plaintiff, is to believe that the sidewalk was "unsafe." How unsafe? To what extent and in what degree? The word embraces all degrees from the slightest sort of unsafety, up to the highest degree of danger. And yet the jury were left to wander at will through all the degrees of unsafety without any guide, as to what degree of safety of the way, was required by law. It is true, that in the instructions for the defendant the court told the jury that it was the duty of the of the defendant to keep its sidewalks "in a reasonably safe condition for use by persons exercising ordinary care," but this did not inform them as to the degree of unsafety which would render the defendant liable, except by a process of legal reasoning, of which the average juror is incapable. And besides that, the defendant's instructions were all drawn and given on a theory which the jury could not possibly accept, if they regarded instruction number one for the plaintiff. And so the result necessarily was to require the jury to decide that if the sidewalk, by reason of the misplaced bricks, was even slightly unsafe for use in any manner, by prudent or by careless persons, and that the plaintiff was injured by reason of the defect, then the defendant was liable.

Again the instruction is erroneous, in submitting to the jury, the question as to whether or not the mere displacement of bricks in the sidewalk, rendered it unsafe for use by persons in the exercise of ordinary care. There was no testimony as to whether such defect would render the sidewalk unsafe for use or not; and all that the jury could do in such case would be simply to exercise their own judgment as to whether or not it was unsafe—and if so, to what extent or in what degree it was unsafe. We submit that the court should have instructed the jury that such an inequality of surface, as was caused by the mere displacement of the

bricks in the sidewalk, was not such negligence on the part of the city as to render it liable, instead of telling them that any and all defects rendered it liable.

In the case of *Messenger* v. *Bridgetown,* 31 Can. S. C. 379, it is held, that a mound of earth about eight inches in height, allowed to remain at the filling over of a trench dug across a street to lay pipe, is not so serious or unusual an obstruction as to indicate negligence on the part of a municipal corporation.

In the case of *Burrough* v. *Milwaukee,* 110 Wis. 478, same case, 86 N. W. 159, it is held, that a depression in the surface of a street, not more than one and one-half inches deep at any point, into which a person, on alighting from a street car at a crossing fell and was injured, is not an actionable defect in the street, through it is at a point where a multitude of people are constantly getting on and off the cars.

In the case of *Clifton* v. *Philadelphia,* 217 Pa. 102, 9 L. R. A. (N. S.) 1266, 118 Am. St. Rep. 906, it is held that a municipal corporation is not negligent in permitting a slight rut to exist in a dirt road, caused by the wheels of heavy wagons slipping off the paving adjoining street car tracks laid therein, upon a grade of five to six inches higher than the dirt way, so as to render it liable for an injury caused to one falling because of such rut, in attempting to alight from a street-car.

In the case of *Dayton* v. *Glaser,* 76 Ohio St. 471, 12 L. R. A. (N. S.) 916, it is held, that where a street had been paved with asphalt, and it had been worn and much broken in many places so that there were many holes from one to four inches in depth, some of them extending over three to four square feet of its surface; and that it had been for a long time in this condition and was much traveled daily, and no other accident had resulted from its use, the street may properly be regarded as in a reasonably safe condition; and the

accident resulting therefrom will not be deemed the natural or probable result of using the street in that condition.

In the case of *Indianapolis* v. *Cook,* 99 Ind. 10, it is held, that where there are slight inequalities in sidewalks, and other trifling defects and obstructions, against which one may possibly strike his foot and fall, but if the injury might be avoided by the use of such care and caution as every reasonably careful and prudent person exercises, the city would not be liable.

In the case of *Burns* v. *Bradford,* 137 Pa. 361, 11 L. R. A. 726, it is held that a slight deviation of the sidewalk from its original level, caused by the action of the frost in the winter or spring, is not such a defect as to make the municipality liable for injury to a pedestrain injured thereby.

In the case of *Hogan* v. *Watervliet,* 42 App. Div. 325, 59 N. Y. Supp. 103, it is held that the existence of an earth sidewalk on a much traveled street, with inequalities and depressions so slight as not to obstruct the ordinary use of the walk by pedestrians, but sufficient to permit water to collect in them which freezes in the event of a sudden fall of temperature, affords no sufficient basis for charging the city with negligence, in an action brought against it by a pedestrian who, while passing along the sidewalk, fell upon ice which had formed in the depressions and was covered by snow.

In the case of *Hamilton* v. *Buffalo,* 173, N. Y. 72, 65 N. E. 944, it is held, that a municipal corporation is not chargeable with negligence, when an accident happens to a traveler by reason of a slight defect such as a rounded depression in a flag sidewalk, four inches deep, 34 inches long, and about twelve inches wide, caused by the wheels of heavily laden tracks, which had worn off the corners of two flagstones where they came together, upon the edge of which depression the person injured stepped and his foot slipped in.

In the case of *Getzoff* v. *New York,* 51 App. Div. 450,

64 N. Y. Supp. 636, it is held, that the existence in a city sidewalk, composed of flagging extending from an abutting building to the curb, of a depression twelve by six inches in area and from two to three inches in depth, caused by a piece of flagging having been broken and then removed or forced into the ground, is not such a defect as will render the city liable to a person who was thrown down in broad daylight, by stubbing her toe against the side of the depression which had existed for a period of from four to six months.

In the case of *Newton* v. *Worcester*, 174 Mass. 181, 54 N. E. 521, it is held, that evidence which shows that a brick sidewalk had in its surface several depressions covered with ice, and varying from one-half to two inches in depth, caused by some of the bricks being depressed and some being elevated, does not warrant a finding in an action for injury, caused by falling upon such ice, that the way, when free from snow and ice, was not reasonably safe and convenient for public travel.

In the case of *Waggener* v. *Point Pleasant*, 42 W. Va. 798, 26 S. E. 352, it is held, that catching one's foot while passing over an incomplete, rough uneven, sideling and slippery sidewalk, against a projecting or loose brick, and falling, is an accident which is liable to occur at any place with old and feeble, careless and indifferent persons; and it is not such an accident as a municipality may be held responsible for, even though the sidewalk is in an imperfect condition.

The reason underlying these and many other similar decisions, is that the duty of the city in the maintenance of its streets consists of two separate acts; namely, to discover defects and then to remedy them; and its duty in each case is to exercise ordinary care and no more. It must exercise ordinary care to discover defects and then ordinary care to remedy them. When it has done this it has performed its whole duty and is not liable for any injury which may occur.

*Fewell & Cameron,* for appellee.

Taking all of the instructions given by the court together, the law was properly and correctly announced to the jury, and in our judgment it ill becomes the appellant to complain of any instruction in this case, since a casual glance at the instructions given for the appellant, shows without a doubt, that the welfare of this municipality was abundantly cared for by the court and especially is this true, since the appellant and its astute counsel procured instruction number six from the court, which told the jury: "That it was the duty of the person walking along the street to exercise ordinary care and prudence to avoid injury, and, too, that he should exercise his sense of sight and touch to ascertain whether or not the way is a safe one. "In other words this appellant appears before this court and in the twenty-two page brief complains of the many alleged errors on the part of the trial court, after having received the above instruction in full which charged the jury in effect that the appellee in this case in using one of its sidewalks should have been very diligent in the use of her eyes and hands and feet, to ascertain whether or not the municipality in this case had provided for her use a safe sidewalk. In other words she had no right to presume that the sidewalk was in a reasonably safe condition for pedestrian traffic.

Appellant cites many decisions from the courts of other states, with a view of having this court overturn and overrule its own decisions respecting the liability of a municipality for injuries sustained by a pedestrian walking along a sidewalk. The trouble with the authorities cited is that our own decisions are controlling on this court, and should be until they have been repudiated. On the question, in this case, we call the court's attention to the case of the city of *Natchez* v. *Lewis,* 90 Miss. 310, and also the case of *Birdsong* v. *Mendenhall,* reported in 97 Miss. 544. These cases in our judgment

announce the correct rule in our state and settle without a doubt the liability of the appellant in the case at bar.

Stevens, J., delivered the opinion of the court.

Mrs. L. Crook, appellee brought this action of damages against the city of Meridian, appellant, for personal injuries alleged to have been received by appellee as a result of a fall on one of the sidewalks of said municipality. Appellee lived in the western part of the city, near Davis street, on which there was a brick sidewalk about three feet in width. About six thirty o'clock on a November evening in 1911, she had occasion to make a hurried trip to a suburban store, located at the corner of Davis street and Thirty-Eighth avenue, to purchase a can of condensed milk for some hungry and crying babies. After purchasing the milk, and while retracing her steps to her home on the south side of Davis street, she stepped into a depression in the sidewalk and fell, receiving the injury for which she claims damages.

The evidence shows that the injury occurred just after dark, and when, according to appellee's testimony, there were no lights burning on Davis street at or near where the injury occurred. There is evidence that an electric street light was stationed at the corner of Davis street and Thirty-Ninth avenue, and also at the corner of Davis street and Thirty-Eighth avenue, and that these lights, under normal conditions, sufficiently illuminated the sidewalk in question. There is, however, no direct testimony in the record that the lights were actually burning at the time of the injury. The records of the lighting company showed that the electric current on that circuit had been turned on some time prior to the injury and remained on all night, and from this evidence the presumption might be indulged that the lights were burning at the time of the accident. The trial in the court below resulted in a verdict of one thousand

dollars in favor of appellee, and from this verdict and judgment appellant appeals, assigning amongst other errors complained of, the refusal to grant the peremptory instruction requested by appellant: Appellee prosecutes a cross-appeal, assigning several errors in the introduction of testimony and the granting of certain instructions.

Appellee in the course of her testimony says:

"When I left the store, I was walking somewhat in a hurry, then; otherwise, I would have been on the guard. I had been to get some milk for the babies."

Other excerpts from her testimony are as follows:

"I went to get condensed milk, and I was in rather a hurry, and fell into this place. It was deep like. It may have been that the bricks were all around there, but they were all out of place for a good-sized place."

Pressed as to the depth of the alleged hole or depression, she says:

"I suppose it was this deep anyway, like it had gone and washed out, or something. Why, I suppose it was a foot; it may have been more; it was just about that."

She furthermore states:

"I was walking fast." "I was in a hurry, too, to get home, and I never noticed."

And asked if she went back to examine the place of injury afterwards, she stated:

"I went around from the store back that way, and the place was fixed."

The other testimony of appellee is to the effect that she put her foot in the depression, fell on the sidewalk, and sustained certain alleged injuries to her right ankle and limb.

The plaintiff introduced two witnesses besides herself —Dr. Clark, whose testimony is confined to the nature of the injuries, and Mr. Morehead, who says there was no hole at all in the sidewalk, but that the only defect in the sidewalk was some bricks that were loose and

some missing. All the testimony in the case shows that the depression was not over three inches, or, as some of the witnesses put it, the thickness of a brick laid flatwise. Some of the witnesses state that all the bricks were there, but were loose; while others state that some of the bricks were loose and some missing. Plaintiff herself, however, states that her fall was occasioned by a step into a depression, and not by reason of tripping on a loose brick.

It is manifest from the testimony that plaintiff was walking very rapidly; that she was looking straight forward, and was not looking where she was placing her feet; that she recovered herself quickly from the fall and proceeded home in haste, without attempting to examine the alleged defect in the sidewalk; and if her statement to the effect that it was dark be accepted as true, then she was in no position to make a careful estimate of the depression or misplaced brick. Appellee was in company with no one, and the exact place in the sidewalk is only identified by her statement that it was across the street, or opposite, Aunt Fannie Durgen's. The direct and positive evidence in the case shows that at this point the brick pavement was three feet in width, and that on the side adjoining the street the bricks had become loose, and some of them, as far as the middle of the sidewalk or eighteen inches from the outside edge, were misplaced, leaving a depression the depth of the thickness of a brick. The question is presented, therefore, as to whether a depression in the sidewalk, caused by misplaced bricks and of the depth of three inches, is such a defect as renders the city liable at all.

In the case of *City of Vicksburg* v. *Hennessy*, 54 Miss. 391, 28 Am. Rep. 354, our court announces the foundation principle running through all the cases of this character. Judge Chalmers, for the court, well says:

"Municipal corporations are not liable for every accident that may happen in their streets. They are not

insurers of the safety of those who use them. Their duty is discharged when they have made them reasonably safe for people of ordinary prudence."

The same principle is announced and recognized in the case of *Nesbitt* v. *City of Greenville,* 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521, in the statement of the court that:

"Ordinary care over its streets is the measure of diligence imposed upon municipal corporations, and . . . they are not insurers against injury to persons using the public streets."

To the same effect is the statement on page 1006, 2 Dillon on Municipal Corporations, viz.:

"The law does not require streets or sidewalks so constructed as to secure absolute immunity from danger in using them, nor is it bound to employ the utmost care and exertion to that end."

It is a principle universally recognized in all the adjudicated cases that municipalities are only required to exercise ordinary care to keep and maintain their streets and sidewalks in a reasonably safe condition for the use of persons exercising ordinary care and caution; or, in other words, sidewalks must be reasonably safe. Now, the statement of appellee that she supposed the hole in the sidewalk must have been a foot deep must be accepted and treated as a mere supposition, based more upon the unfortunate results of her misstep while she was in the dark and impelled by the sense of excitement and haste. Such a conclusion of the witness does not by any means meet the burden of proof laid upon her. She must, by a preponderance of the evidence, show negligence on the part of the city authorities in the construction or maintenance of the sidewalk in question; and every witness in the case, outside of appellee as a witness in her own behalf, fixes the depth of the depression at not exceeding three inches. We are therefore forced to the conclusion that such a depression,

caused by a misplaced brick in a brick paved sidewalk in the residence portion of the city of Meridan, does not in itself show such a defect as renders the city liable for the injury sued for.

In the case of *Waggener* v. *Town of Point Pleasant,* 42 W. Va. 798, 26 S. E. 352, the plaintiff in his declaration alleged that the town—

"wrongfully and injuriously allowed and permitted said sidewalk to become and remain in bad condition, order, and repair, within the corporate limits of said town, in this: That the said defendant permitted a great number of the bricks of which said sidewalk was built to be torn up and carried away, and that other of said bricks were in the ground, with their tops projecting upward above the surrounding surface, and there was also a number of loose bricks partially imbedded in the ground, all of which made a very rough, uneven, and dangerous surface on said sidewalk, and allowed said sidewalk to be and remain uneven, sideling, muddy, rocky, and slippery," etc.

The court sustained a demurrer to the declaration, and in the opinion of the appellate court is this language:

"Such an accident might occur on almost any pavement in any municipality where bricks are used for paving purposes, for there is always more or less projection, owing to wear from travel, defects in the material, and the effects of time and the elements. And sometimes they are purposely laid unevenly, to keep the surface from being too slippery, dangerous, and impassable. Oftentimes the middle of a rough and rocky street furnishes a much safer place of locomotion than the smooth, even sidewalk adjacent thereto; and it is just as absurd to hold a town liable for every accident that occurs on a rough and uneven sidewalk as it would be to hold it liable for accidents on sidewalks that are too smooth and even  .  .  .   Such accidents are liable to occur any place with old and feeble, careless and in-

different persons, and are not such as a municipality may be held responsible for, even though the sidewalk be in an imperfect condition."

In the case of *Morris* v. *City of Philadelphia*, 195 Pa. 372, 45 Atl. 1068, the plaintiff "trod upon a brick in a slight depression in the pavement, and it turned under the pressure of her foot sufficiently to cause her to fall," and the sourt says:

"To hold the city liable in damages for every trivial accident of this kind would be to adopt a measure of liability quite unheard of, and entirely too severe for the ordinary administration of municipal affairs. The possibility of occasional injury in such circumstances is one of the inconveniences . . . in large and populous cities, to which the citizen must submit."

In the case of *Hamilton* v. *City of Buffalo*, 173 N. Y. 72, 65 N. E. 944, we excerpt from the opinion as follows:

"The authorities of a city are not required to keep the streets in an absolutely perfect condition, for this would be practically impossible. All kinds of pavements that have heretofore been discovered and used are subject to wear and some displacements when used by heavily laden vehicles, and this cannot be prevented. It is the duty of the municipality to remedy defects, within a reasonable time, which an ordinarily prudent man would regard as dangerous. The law imposes upon the municipality the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care; but when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated as likely to happen, it is not chargeable with negligence."

In the case of *Butler* v. *Village of Oxford*, 186 N. Y. 444, 79 N. E. 712, it was held that the municipality was not liable for injuries received by a pedestrian who

stumbled against the edge of a stone sidewalk which projected above an adjoining dirt sidewalk from two and one half inches in the center to about five inches at the edge of the walk, and the court says of the liability of the defendant:

"It is not an insurer, and is not expected to maintain walks and streets in such an absolutely perfect condition as to render an accident impossible, but is expected to use reasonable care and prudence in detecting and remedying any defect which it might be fairly anticipated would be dangerous and liable to cause an accident."

This case was cited by and approved in the similar case of *Stratton* v. *City of New York*, 190 N. Y. 294, 83 N. E. 40. In the case of *City of Indianapolis* v. *Cook*, 99 Ind. 10, the obstruction complained of in the sidewalk consisted of a water box, six by seven and one-half inches in size, and extending one and one-fourth inches above the level of the sidewalk. The plaintiff in that case stumbled and fell over said water box on a dark and rainy night, at a time when it was difficult to see the water box. The decision of the case turned upon the question of negligence on the part of the plaintiff, but as to the liability of the city in any event the opinion says:

"A city is not an insurer against accidents upon its streets and sidewalks. It is simply required to keep its streets and sidewalks in a reasonably safe condition for persons traveling in the usual modes by day and night, and using ordinary care. A man may stumble and fall anywhere, in a house or in a street; but, because he happens to fall in the street, it follows by no means that the city is responsible for the injury he receives. There are slight inequalities in sidewalks, and other trifling defects and obstructions against which one may possibly strike his foot and fall; but if injury might be avoided by the use of such care and caution as every

reasonably prudent person ought to exercise for his own safety, the city would not be liable."

Counsel for appellee rely upon the cases of *City of Natchez* v. *Lewis,* 90 Miss. 310, 43 So. 471, and *Birdsong* v. *Mendenhall,* 97 Miss. 544, 52 So. 795. In the Lewis Case there was a hole in the sidewalk, twelve inches or more in length, at least eight inches in depth, and slanting downward and upward towards the street, and it was shown.that this hole had remained there so long that the city had due notice thereof. In the Birdsong Case plaintiff's foot was caught in a hole, and he was tripped, and fell and sustained injuries. The exact character of the defect complained of is not disclosed by the reported case. The principal.defense was to the effect that plaintiff had knowledge of the condition, and was thereby debarred from any recovery, and the opinion of the court deals primarily with this point. The point was not raised in that case that the defect complained of was not an unreasonable situation, and we gather from the briefs of counsel that the defect was indeed dangerous.

To sustain the judgment recovered by appellee in this case would be to announce a new measure of liability on the part of municipalities in the construction and maintenance of sidewalks. It would be equivalent to holding that sidewalks in the residence portion of our cities must not deviate three inches from a perfectly smooth surface, and force the maintenance of sidewalks of cement or some similar construction. The practical result would be to render municipalities insurers of the safety of pedestrians. A municipality is nothing more than a majority of its citizens, and in the administration of its corporate affairs courts must continue to apply the rule of reason. The defect in the sidewalk here complained of is just such a defect as perhaps exists in every municipality in the state, and the fall is one that might by accident be experienced by any one in the home or on the streets.

There is no merit in any of the assignments of error on cross-appeal. The chief complaint is about the amount of the verdict. The instructions granted appellee were most liberal. If there is any error in the admission of testimony, or in the granting of instructions, it was in appellee's favor. The fall and resulting injury by appellee in this case are most unfortunate, and the sympathy of any court would naturally be aroused in her favor.

Let the judgment of the lower court be set aside, and judgment entered here for appellant.

Reversed and judgment here for appellant.

*Reversed.*

Cook, J., dissents.