## McComb City v. Hayman et al.

[87 South. 11, No. 21323.]

1. MUNICIPAL CORPORATIONS. *Must use ordinary care to keep streets in reasonable safe condition.*

   It is the duty of a municipality to use ordinary care to keep its streets in a reasonably safe condition for persons using ordinary care and prudence.

2. MUNICIPAL CORPORATIONS. *Liability for injury to child by defective street same as in case of adult.*

   The liability of a municipality for an injury to a child caused by a defect in its streets is the same as in the case of an adult injured by such defect while in the exercise of due care.

3. MUNICIPAL CORPORATIONS. *Under no duty to guard gully near street when not in dangerous proximity thereto.*

   A municipality is not required to keep the entire width of its streets open and safe for travel, provided the portion thereof set apart for travel is wide enough to be safe, and it is charged with no duty to fill up or guard a gully that may be near a street unless in such close proximity thereto as to be dangerous to a traveler passing along the street and using ordinary care.

4. NEGLIGENCE. *Attractive nuisance artificially created.*

   In order for a thing dangerous to children to come within the attractive nuisance doctrine, it must have been artifically created.

Appeal from circuit court of Pike county.

Hon. D. M. Miller, Judge.

Action by H. A. Hayman and others against McComb City to recover for wrongful death. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

*Justin J. Cassidy* and *W. B. Mixon,* for appellant.

It seems to us that the issue squarely made in this case, is, should city authorities be compelled, at the expense of the city, to safeguard its streets, sidewalks, and drainage, both natural and artificial, so as to permit children who have just learned to walk to go hither and thither alone, unprotected upon the streets of the city and that parents may recover regardless of the care which they should exercise to protect their offspring. From the instructions given the plaintiff, it seems that this case was tried on the theory that the city passively allowed an attractive nuisance to exist in the street or near to it by allowing flowers to grow on the banks of the drain which attracted the young child.

In the discussion of the city's duty in regard to streets, this question naturally arises. How much of the street as shown on the map of the town must be kept open, unobstructed, free from defects and in a reasonable state of repair? When a town or city is laid off, the plot or map shows squares or blocks, lots and streets throughout the entire area of territory sought to be incorporated. The town commences to build usually near the center and the streets are opened, cleared and put in use as the population demands. As the town expands, new streets are opened and used of varying widths consistent with demands of travel and population. Near the center of business districts the demand for travel is such as to force a dedication and use of a street from curb to curb, while as the distance grows from the center and the demand decreases, mere roadways, paths and trails serve the purpose of travel, in what, on the map of the town, may show a street

sixty or eighty feet in width. .These streets gradually widen with the growth of the town as the authorities take cognizance of the demand and put same in such condition and to such width as in their judgment is reasonably necessary to invite the public to use. It is a matter of common observation that in every town within this state, though on the map, streets are shown to be from forty to one hundred feet wide, yet in a great number of these streets the public is only invited to use, both by custom, and condition, a width varying from ten to thirty feet. It is our contention that it is this portion of the street which must be kept unobstructed and in reasonably safe condition for the use as above set forth.

This court has recently decided in the case of *G. & M. C. Trac. Company* v. *Manual,* 85 So. 308, where a municipal street was thirty-seven feet wide and the city kept seventeen and seven tenths feet of said street open for a traveled way for vehicles, in good condition that it might allow the obstruction of a guy wire and trolley poles of a railroad company to occupy the street three and one-half feet from the traveled way. It is also a matter of common observation that in a great number of instances it is impractical and impossible owing to natural conditions for a city to open up every street and every part of a street for travel especially where streams and natural drains invade the area alongside or across the streets.

Where a street had been opened and worked, and the public invited to use it, from curb to curb, it stands to reason that the authorities must maintain the entire street in a reasonably safe condition free from obstructions, excavations or defect liable to injure persons in the reasonable use of the street.| The authorities must anticipate that every portion of the width of a street is open, then can it be said that the authorities must anticipate that perchance some one will wander into and be injured in the unused portion of the street, to which no invitation has ever been extended by reason of any act of the municipality. In taking this position we do not conflict with the

case, *Higginbottom* v. *Village of Burnsville,* 113 Miss. 219, for, in that case, the accident occurred in that portion of the street which the public had been invited to use. The authorities had not only opened the street at that point, but had built a culvert or bridge and they, by sheer neglect, allowed not only the bridge but the traveled street to get impassable.

We do not conflict with the case of *City of Natchez* v. *Lewis,* 90 Miss. 319, for in that case there is no contention but that the city had provided the sidewalk for the public and allowed it to get out of repair. The same can be said of *Birdsong* v. *Mendenhall,* 97 Miss. 547, and *Pascagoula* v. *Kirkwood,* 86 Miss. 630, and a great number of other cases along this line. Now taking this view, could a grown person, walking along, even in the nighttime, leave the traveled way and after trudging through the grass, weeds and vines, come to this hole of water, fall in and be injured and recover as a matter of law even though the authorities could have drained the place? We think not.

It is laid down in Ruling Case Law, vol 13, pages 368 and 369, that in case a child rightfully in the highway is injured by a defect therein, the liability of the city is precisely the same as in the case of an adult who is injured while free from fault from a like cause citing 58 Am. Reports, page 65, and that in estimating the degree of carelessness with which the city is chargeable in all cases of this sort, the character of the obstruction is to be considered with reference to the proper uses of the street as a thoroughfare of travel and not as a place for the recreation of children, and the liability depends upon whether the street is reasonably safe for ordinary travel. In determining whether a defect is in such close proximity to the highway as to render it unsafe, that proximity must be considered with reference to the highway "as traveled and used for the public travel," rather than as located. In the case of *Arnold* v. *St. Louis,* 75 Am. St. Rep. 417, it was held that a city was not liable for the death of a child from drowning while skating on an unenclosed pond in the

street.   This case is good authority for appellant on several phases of the case at bar.

We call the court's attention to the rules announced in the following leading cases from other states, which seem to be applicable to the case made by the record here. *Smith* v. *City of Rexburg,* Ann. Cas. 1915B, page 276; *Harrodsburg* v. *Abram,* 138 Ky. 157, S. W. 758, 29 L. R. A. (N. S.) 199; *Clark* v. *Manchester,* 62 N. H. 577; *Schauf* v. *Paducah,* 106 Ky. 228, 50 S. W. Am. St. Rep. 220; *Arnold* v. *St. Louis,* 152, Mo. 173, 53 S. W. 990, 75 Am. St. Rep., 447, 48 L. R. A. 291; *Dehanitz* v. *St. Paul,* 73 Minn. 385, 76 N. W. 48; *Smith* v. *Rexburg,* Ann. Cas. 1915B, page 276; *Knowlton* v. *Augusta,* 84 Me. 572, 24 Atl. 1039; *Lineburg* v. *St. Paul,* 71 Minn. 245, 73 N. W. 723; *Grant* v. *Fitchburg,* 39 Am. St. Rep. 449.

Municipalities are not corporations operated for profit, but are sub-divisions and a part of the general government, and the only reason which can be assigned as to why they should be held liable for personal injuries, and counties and other sub-divisions exempted, is probably because the governing authorities are closer in touch with the affairs of the municipality, and thereby the citizenship is held to a more strict account for the performance of the duties of the governing officials.

Yet, it is unreasonable and an injustice to them to hold them liable for the result of a condition which they could not have anticipated.  This court has frequently held that the city is not an insurer of the safety of those who travel its streets, but should only exercise reasonable care to keep such streets in a condition that would prevent accident or misfortune to persons using same in the usual way, and for the purpose for which they are dedicated.

It may be, and probably is, that no one is to blame for this unfortunate occurrence and that this case comes under the rule announced in Thompson's Commentaries on the Law of Negligence, vol. 1, page 316, in which it is said that there is a considerable class of cases where negligence cannot be charged to the parents of a child or to the de-

fendant but must be ascribed to accidents and misfortunes that are attendant upon child 'life, and others are not responsible for their helplessness as they have no right to expect that parents will allow their children to. go to, or play in, dangerous places. *Daugherty* v. *Horseheads*, 159 N. Y. 154; *Harodsburg* v. *Abram*, 138 Ky., 157; *Smith* v. *Roxburg*, Am. Cas. 1915B, 276; *Knowlton* v. *Augusta*, 84 Me. 572; *Newport News* v. *Clark, Adm.*, 6 L. R. A. (N. S.) 805; *Thompson* v. *Neg*, vol. 1, page 315; *Goeltz* v. *Town of Sahland*, 75 Miss. 1890; *Grant* v. *Ry. Co.*, 109 Me. 138; *Peters* v. *Bowman*, 115 Col. 345; 28 Cyc. 1426; *Travis* v. *Kansas City*, 89 Kan. 547; *Biegel* v. *City of New Orleans*, 79 So. 867; *Kassman* v. *St. Louis*, 155 Mo. 299; *Arnold* v. *St. Louis*, 48 L. R. A.; *Rouse* v. *Chaney*, 114 Ga. 194; 29 Cyc. 464; 55 L. R. A. 221; 2 Dillon on Municipal Corp. (4 Ed.), 980; *Clara* v. *Richmond*, 83 Va. 355.

The following citations considered negligence of parents. 45 Mo. 70; 47 N. Y. 317; 100 Mass. 572; 27 Mich. 503; 39 Md. 438; *Brown* v. *Salt Lake City*, 33 Utah, 222; *Chavrox* v. *Salt Lake City*, 131 Pac. 901; *Garvin* v. *Chicago*, 99 Ill. 66; *Linburg* v. *St. Paul*, 71 Minn. 245; *McCabe* v. *Am. Woolen Co.*, 124 Fed. 283; *Blum* v. *Weatherford*, 121 La. 93; *Oil City* v. *Jackson*, 114 Penn. 321; 75 Miss. 642; *Leotc*. v. *Town of Ashland*, 44 N. W. 770; 109 Me. 138; 53 Mich. 274;. p. 316, Thomp. Com. on Law of Neg.

*J. W. Cassedy* and *F. D. Hewitt*, for appellees.

On question of liability in the first instance we refer the court to the following authority: Vol. 20, paragraph 5, section 70, page 79, of Ruling Case Law, and sections 71, 72, 73, 74 and 75. All discuss the doctrine of liability for injuries caused to children on account of attractive nuisances. Section 74, page 85, reads as follows: "Children, wherever they go, must be expected to act upon childish instincts and impulses, and others who are chargeable with the duty of care and caution toward them must

calculate upon this and take precautions accordingly. If they leave exposed to the observation of children anything which will be tempting to them, and which in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that to be taken." And section 75 at page 85, the accessibility of offending places and appliances, tends directly to show constructive knowledge that the injured child might sustain an injury therefrom and knowledge of the peril as we have seen is the basis of liability, a thing which otherwise might not attract may become a source of an injury when so situated as to imply to the childish mind a right to make free uses. The fact that the offending instrumentality was placed in the highway tends to disclose accessibility or knowledge that it would be made use of by children, for no doubt young and timid children will make free use of a thing which if it were on private grounds would be beyond their reach. The fact that the instrumentality was in an unenclosed lot adjacent to the highway also tends to show accessibility."

In the case of *Omaha* v. *Bowman,* 52 Neb. 293, reported in 40 L. R. A. 531, and 66 Am. State Report 505, a case strikingly in point. In the above case, a city was held not liable for a death of a seven-year-old boy who is drowned within its limits in a pond on private property, not on or in dangerous proximity to a public highway, although the city permits the water to accumulate and remain there and the boy is drawn to the pond by its attractiveness to children. Afterwards, in the same case and upon an amended petition, it was charged that the water of the pond extended to and over the sidewalk of a portion of the street, and that deceased entered the pond from the street, it was held that a case was made against the city on the authority of *Omaha* v. *Richards,* 49 Neb. 244, reported in 68 N. W. 528. Rehearing in 50 Neb. 844, reported 70 N. W. 363, in which the city was held liable under similar circumstances on the ground that it was the duty of a municipal corporation to keep its streets in rea-

sonably safe condition for the use of the public. *Bowman* v. *Omaha,* 59 Neb. 84, reported in 80 N. W. 259.

In *Picking* v. *McMahon,* 154 Ill. 141 ,reported in 27 L. R. A. 206, 45 Am. St. Rep. 114, 39 N. E. 484, a city was held liable for an action brought to recover for the death of a boy who was drowned in a pond, same being situated near a street.

In *Kansas City* v. *Siese,* 71 Kan. 283, reported in 80 Pac. 626, a city was held liable on the authority of the above case for the drowning of a twelve-year-old boy in a pond in which he was bathing.

In *Franks* v. *Southern Cotton Oil Co.,* 78 S. C. 10, reported in 12 L. R. A. (N. S.) 468, 58 S. E. 96, an owner of an unprotected reservoir in an open field near residences and highways, where children resort to play, was held liable for the death of a boy less than ten years old, who while at play fell into the water and drowned. In *Tucker* v. *Draper,* 62 Neb. 66, reported in 54 L. R. A. 321; *Elwood* v. *Addison,* 26 Ind. App. 28, reported in 59 N. E. 47; *Omaha* v. *Richards,* 49 Neb. 244, reported in 68 N. W. 528; *Indianapolis* v. *Emmelman,* 106 Ind. 530, reported in 58 Am. Rep. 65, and 9 N. E. 155.

The Mississippi Cases in point are as follows: *Mackey* v. *Vicksburg,* 54 Miss. 777; *Vicksburg* v. *McLain,* 67 Miss. 34; *Spangler* v. *Williams,* 67 Miss. 1; *Lepwich* v. *Gaddis,* 72 Miss. 22; *Higginbottom* v. *Village of Burnsville,* 113 Miss. 226.

It was proven at the trial that the street was laid out on the map as sixty feet in width, it was stated by the mayor who testified for the city, that the street at this point should be forty feet wide, and the testimony in the case that the hole of water was within a sixty-foot street, and also touched and was partly within a forty-foot street. The testimony further showed that the hole was in the ditch or gutter used for a drainway for the street, and that the accumulation of water was caused by the city's failure to open the ditch or gutter by the side of the street. The testimony showed also that this street was in a popu-

lar part of the city and was in use constantly by as many as five hundred people, one side of it was equipped with concrete sidewalks, etc.

The court in discussing this question states: "It is true we think that a town is not called upon to open new streets in advance of public needs, and even where a street has been accepted, recognized as a pathway, a different and less degree of care may suffice for one infrequently used, than for those in the heart of town. But it does not follow because a way is but little used that the city may permit pit-falls and dangerous precipices to be made and continued in it. In *Walker* v. *Vicksburg,* 71 Miss. 899; *Nesbeth* v. *Greenville,* 69 Miss. 22; *Butler* v. *Oxford,* 69 Miss. 678, all hold that it is the duty of the city to keep its streets in reasonably safe repair.

In the case of *Pascagoula* v. *Kirkwood,* 86 Miss. 630, the court states that a pedestrian is not required by law to leave the sidewalk to go out into the street in order to avoid a defective sidewalk which the city was negligently permitted to continue in a dangerous condition after notice of the existing defect. The sufficiency of an artificial drain substituted by the city for the one originally on premises of the plaintiff furnishes the latter with good ground for an action for damages. *Fewell* v. *Meridian,* 90 Miss. 380.

The court will find a clear statement of law in Vol. 1 of Commentaries on the Law of Negligence, by Thompson, page 306, and section 324: "Small children having a right to light, air and exercise, and children of the poor cannot be constantly watched by their parents. From these considerations it follows that a mere fact that a child of tender years has been injured while at large and unattended on a public street or highway, does not necessarily impute contributory negligence to its parents or guardian as matter of law, but is at most only *prima-facie* evidence of negligence on their part subject to explanation. The question whether they have been negligent in allowing the child to be at large is generally a question

for the jury in view of the facts attending the particular case; even in a case of a very young child, in one case only two years old, if notwithstanding the exercise of reasonable care on their part having regard to the situation, the child escapes upon the public street and is therein injured through the negligence of another, that other must pay for the damage."

We respectfully submit that there is no reversible error disclosed by the record in this case, and that same should be affirmed.

Smith, C. J., delivered the opinion of the court.

This is an action at law in which the appellees, who are the father, mother, and brother of Jerome Wilson Hayman, deceased, recovered from the appellant damages for the death of Jerome Wilson Hayman, a child two years and seven months old, who was drowned in a gully near one of the appellant's streets.

The streets of McComb City at the place where the death of the child occurred run north and south and east and west intersecting each other at right angles. Avenue E runs east and west, intersecting Magnolia and Cherry streets, which run north and south one block apart. The child lived with its parents on Magnolia street in the second house south of Avenue E, and its uncle, H. E. Wilson, lived on the north side of Avenue E in the second house east of Cherry street. There is no sidewalk on the north side of Avenue E opposite the block in which the child lived, except for a short distance just before it crosses Cherry street. A gully begins some distance northeast of Avenue E and runs through private property to Avenue E striking it a short distance west of Cherry street, then east along Avenue E to Magnolia street, and then on through property owned by private individuals. This gully was formed by water from the adjacent land for which it is a natural drain. Along Avenue E it is partly in the land acquired by the city for street purposes.

Between this gully and that part of the street which has been set apart and improved by the appellant for travel there is a grass plot variously estimated by the witnesses as being from five or six feet to sixteen feet distant from the north edge of the traveled way of the street. The only witness who measured it testified that it was sixteen feet, and photographs thereof introduced in evidence indicate that his testimony is probably correct.

A path crosses Avenue E a short distance east of the gully, estimated by some of the witnesses to be not more than two or three feet distant therefrom. The gully is several feet deep, its sides are covered with honeysuckle vines, and when the child was drowned these vines were in bloom and the water in the gully was about three feet deep. The child was fond of flowers.

On the 25th day of March, 1919, the child with its mother's permission went to the house of its uncle, and on returning therefrom alone about noon it fell into this gully about thirty feet west of the path which crosses Avenue E and was drowned. It was last seen by a mail carrier, just a few minutes before its body was found, playing in the street about one hundred fifty feet east of the gully. The place at which the child was drowned was viewed by the court and jury during the progress of the trial. There is no evidence that the child fell into the gully from either the street or the path which crosses it, but it is manifest that at the time it fell into the gully it had wandered from the street. It is also manifest that an adult traveling along Avenue E in the daytime and using ordinary care is in no danger whatever of falling or being thrown therefrom into the gully.

A peremptory instruction requested by the appellant was refused.

The measure of a municipality's duty in the maintenance of its streets is to use ordinary care to keep them in a reasonably safe condition for persons using ordinary care and prudence. *Vicksburg* v. *Hennessy*, 54 Miss. 391, 28 Am. Rep 354; *Meridian* v. *Crook*, 109 Miss. 700, 69 So.

182, L. R. A. 1916A, 482; *Higginbottom* v. *Burnsville,* 113 Miss. 219, 74 So. 133, and its liability for an injury to a child caused by a defect in its streets is the same as in the case of an adult injured by such defect while in the exercise of due care. 13 R. C. L. 368. This duty of a municipality to use ordinary care to keep its streets in a reasonably safe condition does not require it in all cases to keep the entire width of its streets open and safe for travel, provided the portion thereof set apart for travel is wide enough to be safe, *Gulfport & M. Coast T. Co.* v. *Manuel,* 85 So. 308; 2 Elliott on Roads and Streets (3d Ed.), section 800, from which it necessarily follows that a city is under no duty to fill up or guard a gully that may be near the street or traveled part thereof unless it is in such close proximity thereto that a traveler passing along the street and using ordinary care is in danger of falling or being thrown into the gully and being injured thereby. *Butler* v. *Oxford,* 69 Miss. 618, 13 So. 626. Tested by these rules, it is manifest that the appellant violated no duty it owed to the traveling public in not filling up or guarding the gully in which this child was drowned.

But a recovery is also claimed by the appellee under the attractive nuisance doctrine on the ground that the child may have been attracted to the gully by the flowers on the vines which covered its sides and have fallen into the water while attempting to gather them. There are two answers to this contention: First, in order for a thing dangerous to children to come within the attractive nuisance doctrine, it must have been artifically created, 1 Thompson on Negligence, section 1030; and, second, there is no evidence that the child was attracted from the street to the gully by the flowers, there being in fact nothing in the evidence from which its reason for leaving the street and going to the gully or how it came to fall therein can be determined.

Reversed, and judgment here for appellant.

*Reversed.*