# CITY OF NATCHEZ *v.* CRANFIELD.

(Division B.   Nov. 25, 1929.·  Suggestion of Error Overruled Jan. 6, 1930.)

[124 So. 656.   No. 28178.]

W. C. Martin and S. B. Laub, both of Natchez, for appellant.

Kennedy & Geisenberger, of Natchez, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Madison street in the city of Natchez is paved in the center, and on the south side of said paved area there is, first, a neutral strip about thirty-six inches wide, and next to this and extending to the property line is a concrete sidewalk five feet wide. Immediately adjacent to the pavement and in the neutral strip aforesaid there is, at the point where the injury in this case occurred, a catch-basin which was covered with a wooden cover made of 1x12 planks nailed on two crosspieces, 2x4. The top of the catch-basin is about three feet wide by four feet long. On the morning of the injury, appellee, while attempting to cross from the sidewalk on the said south side of said street to the opposite side of the pavement, where her automobile was parked, stepped on said cover and in some way fell into said catch-basin and was hurt. Suit was filed against the city to recover for the injury; judgment was rendered sustaining the action, and the city appeals.

The manner in which the injury occurred, as laid in the declaration, is specifically that, when appellee stepped on the said catch-basin cover, it "tilted, turned and bent with the weight of the plaintiff, throwing her down into said excavation and violently against the walls thereof;" and the specific charge of negligence alleged against the city was that the said cover was "carelessly and negli-

gently laid loosely across said excavation without being in any manner secured or attached to the ground.''

We quote the entire of the testimony of appellee on the precise point as to how the injury occurred:

''Q. Tell the jury how you received these injuries. A. I stepped on a board across this hole and the end of the board went down and this limb went down in the hole and I caught on my arm. Q. How was this hole covered? A. It has a board across it. Q. Was the board fastened to the ground? A. No sir, it was not fastened when I stepped on it. It turned like that, and this limb went in. Q. What was the size and depth of the hole? A. About like that (showing) and a board like that, and went sideways. Q. This board you stepped on there, that was two or three planks nailed together to make a covering over this hole? A. I don't know about that, but when I stepped on it, it turned over. Q. How large was this wooden covering? A. It seemed to me about that wide (showing about two by three feet). Q. This plank was over the hole? A. Yes, sir, it certainly was. Q. And you say the plank turned when you stepped on it? A I could not say whether it broke or turned.''

The only other eyewitness who testified answered as follows:

''Q. Tell the jury about it. A. When she came out I came out behind her and she stepped on this plank. Q. Where was the plank? A. Between the curb and the sidewalk over the hole. Q. What happened then? A. The plank leant to one side and she went down in it. Q. Did you make an outcry just as she fell? A. Yes, sir, I wanted to tell her not to get on it. Q. Why? A. Because the plank was not nailed. It was kind of rotten on one end. Q. This plank that was there, was it one or more planks? A. It was two planks nailed together. Q. Tell the jury was it approximately this size? A. It was about this wide (showing), Q. About two and a half by three

feet? A. Yes, sir, I guess so. Q. What you call the hole was the city sewer? A. Yes, sir. Q. And these planks went over the opening in the sewer? A. Yes, sir. Q. This hole was completely covered by the plank? A. Yes, sir. You could only see it from Pearl street.''

The further testimony developed that when, about two years before this date, the city was paving this street and others, covers for the catch-basins, or at least some of them, were made of heavy plank 1x12, nailed securely to crosspieces 2x4, and large enough to fully cover the several catch-basins, and that later these basins were supplied with iron coverings, including the basin here in question, but this iron covering was not placed over this particular basin until after the accident, and there is no showing in the record when the iron coverings were placed upon the others, nor whether it was all done at once, or whether the process was gradual and progressive. It is not shown by the record whether any of the covers, the wooden ones first used, or the iron ones later placed, were in any manner fastened to the ground; it being shown only that in both cases the covers were not fastened over the particular basin here in issue. And there is not a word in the testimony which undertook to inform the jury in reference to whether catch-basin covers can or ought to be fastened, or, if so, how or in what manner.

The theory upon which appellee apparently relied and upon which the jury perhaps acted is disclosed in the following instruction granted appellee by the court:

''The court instructs the jury for the plaintiff that the park strip neutral ground or unpaved strip between the schillinger surface of the sidewalk and the curbing of Madison street is as much a part of said sidewalk as any other portion thereof, and that it was and is the duty of the defendant city of Natchez to keep said strip in a reasonably safe condition for travelers upon said

sidewalk; and if you believe from the evidence in this case that the defendant made, or caused to be made, a hole or excavation in said park strip of said sidewalk, and negligently placed, or caused or permitted to be placed, thereover a board or plank, and *that said board or plank was not secured to the ground* but was negligently and carelessly laid across said hole or excavation so as to make the same dangerous to travelers upon said sidewalk, and that said plaintiff, as a traveler upon said sidewalk and in the exercise of reasonable care and caution, stepped upon said board or plank, which tilted, turned or bent with her weight so that plaintiff fell into said hole or excavation and was injured, then you shall find a verdict for the plaintiff.''

We have underscored the words which, upon a fair reading of the instruction, and interpreting it as a jury would most likely interpret it, told the jury that it was negligence for the city to place the cover without securing same to the ground. There was no word of testimony that the cover, although made of wood, was defectively constructed, or in a manner not suitable for the purpose for the time the same was intended to serve and did serve. And, as to the casual observation of one witness that ''it was kind of rotten at one end,'' there is (1) no charge in the declaration of unsoundness in the material composing the cover; (2) no word in the testimony that the ''kind of rot at one end'' proximately caused the injury or in any way contributed thereto, or was sufficient to cause the same or to contribute thereto; and (3) the suggestion of rottenness was overwhelmingly disproved by other witnesses who testified directly and from positive personal knowledge on that subject. There was no testimony that the cover was not large enough, whereas, on the contrary, the entire testimony on that point was that the cover was full in size and did entirely cover the top of the basin.

Then what was the theory upon which the verdict for plaintiff was returned? It could have been upon one of only three theories: First, that the city is an insurer against injuries on its streets; but this is not admissible, for ordinary care over their streets is the measure of duty required of municipalities, and they are not insurers against injury to persons using the public streets. City of Meridian v. Crook, 109 Miss. at page 712, 69 So. 182, L. R. A. 1916A, 482; McComb City v. Hayman, 124 Miss. at pages 535, 536, 87 So. 11, and authorities there cited. Second, that the mere fact that the injury happened was sufficient prima facie to show negligence. But the verdict cannot be sustained on that basis, for the doctrine of res ipsa loquitur does not apply in actions against municipalities in such cases. City of Corbin v. Benton, 151 Ky. 483, 152 S. W. 241, 43 L. R. A. (N. S.) 591. A plaintiff "must, by a preponderance of the evidence, show negligence on the part of the city authorities in the construction or maintenance" of that part of the street in question. City of Meridian v. Crook, 109 Miss. at page 712, 69 So. 182, 183, L. R. A. 1916A, 482. This leaves only the third theory, the one stressed by the instruction above copied, namely, that it was, as a matter of law, negligence for the city to place the cover over the basin without fastening the cover to the ground.

This latter proposition resolves itself simply to this: May courts and juries take judicial notice or common knowledge that, unless the cover of a catch-basin in the neutral strip is fastened to the ground, there is actionable negligence? As already said, there is no evidence in the record whether it is customary to fasten these catch-basin covers in the neutral strips, or whether they can be fastened, or in what manner it can or should be done, if at all. So far as the record now before us is concerned the condition with respect to the placing of the catch-basin cover, which is asserted as a negligent defect in

this case, may be one which exists in practically every municipality in the state. City of Meridian v. Crook, 109 Miss. at page 716, 69 So. 182, L. R. A. 1916A, 482. The jury not having been furnished any testimony on this proposition, we have no official knowledge before us on the subject. It is true that members of the court may say that we have personally made some observations along that line, but, if we might rely on that sort of information, we would be compelled to say that, so far as our personal observation has extended, we have found it the usual custom to place these covers in neutral strips over the basins without fastenings, whereas, so far as we know, others in other surroundings may have seen them fastened. The point is that it is not a matter of which courts and juries may take common knowledge, and, there being no testimony in the record on the question, the quoted instruction has no support in the particular mentioned, and the verdict is likewise without the necessary support.

As to the several other questions raised, we express no opinion, deeming a discussion of them unnecessary as the record now stands.

Reversed and remanded.