CITY OF VICKSBURG *v*. SCOTT.

(Division A.  Jan. 15, 1934.)

[151 So. 914.  No. 30833.]

R. M. Kelly, of Vicksburg, for appellant.

Thames & Thames and **Brunini & Hirsch,** all of Vicksburg, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee brought this suit against the city of Vicksburg to recover damages for personal injuries alleged to have been sustained by him as a result of the negligence of the city in constructing and maintaining a sewer or drainage pipe under the sea wall and river landing along the Yazoo canal or river in said city. There was a verdict and judgment in favor of appellee for six thousand dollars, from which the city appealed.

Without the aid of a personal inspection of the premises and the photograph offered in evidence it would be difficult to so describe, within the bounds of an opinion of reasonable length, the premises and surrounding territory as to be readily intelligible to the reader, and we will therefore limit the statement of facts to those that appear to be necessary to an understanding of the points herein decided.

The landing upon which the injury occurred lies between the Yazoo canal or river and 'a sea wall which extends for a distance of approximately ten city blocks' along or near the western boundary of the most westerly public street, extending north and south, in the city of

Vicksburg. This sea wall was erected for the purpose
of protecting that part of the city which during times of
excessive high water was subject to overflow. Through
this sea wall there are numerous gates or passageways
to the river landing, which at times of high water are
closed and sealed, but at all other times are kept open
to accommodate travel to and from the landing. When
these gates are closed, as the river rises, it is necessary
to operate pumps inside the wall to carry the waters
which accumulate there over the wall and into the canal,
as a large part of the city of Vicksburg drains toward the
wall.

For low stages of the river the drainage is provided by
large sewers or drainage pipes, three feet in diameter,
which pass under the wall and on under the landing to
the river. These drain pipes are so constructed as to
prevent the water being forced back through the pipes
east of the wall and into the city. For this purpose the
pipes are equipped with "flap valves," which are closed
at high stages of the river, and remain open at low stages
in order that the drainage of the city may pass through
unobstructed. For the purpose of opening, closing, and
operating the flap valve in the pipe located at or near the
Clay street entrance or gate, there was constructed be-
tween the sea wall and the river, and about twelve or
fifteen feet from the wall, a concrete box about four feet
square and four and a half feet deep. The drain pipe
enters this box through the east wall thereof and begins
again at and through the west wall and extends on to the
river under the surface of the landing. To the top of the
drain pipe, at the point where it opens into the concrete
box through the east wall thereof, a heavy iron valve is
attached, which in times of low water is raised to a
horizontal position by a chain attached to the bottom of
the valve. This valve is held open in this position by ex-
tending this chain back and fastening it to the top of the
sea wall. In times of high water this valve is loosened

and permitted to swing down so as to cover the opening of the drain pipe, and it is held in place by the pressure of the water against it.

At the time this concrete box was constructed, four iron rods about fifteen to eighteen inches apart were placed across the open box. While the evidence upon the point is not clear to us, it appears that these rods were placed about a foot and a half below the top of the box, and when the valve was fastened open it rested under these bars. During high water, previous to the time of the alleged injury to the appellee, for the purpose of removing obstructions from this box, the city had two of these bars cut out, and at the time of the alleged injury only two of them were in place. There was no grating or other cover over this box.

Between the sea wall and the water line, as fixed by the lowest stages of the river, a considerable portion of the landing is paved with concrete for the convenience of persons and vehicles using the landing. There are numerous unpaved places on the landing, denominated neutral grounds. From the Clay street entrance or gate in said wall, and a few feet south and a considerable distance north thereof, the paving extends from the gate and wall to the water at low stages. A few feet south of the Clay street gate there is an unpaved or neutral strip about twelve or fifteen feet wide; along the western boundary of this neutral strip at the point where the paving ends, there is a concrete curb about one foot high and eight inches wide at the top. There was testimony of civil engineers to the effect that the sea wall, drainage system, valve box, and landing were properly constructed and operated from an engineering standpoint.

About twelve or fifteen feet south of the Clay street gate one of the large drainage pipes passes under the wall and on to the large valve box already herein described. This box is located in the neutral ground and immediately adjacent to the curb last above described.

West from the curbing at the point where the box is located to the river the landing is paved, but a short distance south of the box the paving appears to narrow to a mere driveway adjacent to and along the curb which incloses the neutral ground next to the wall, above referred to. There was some testimony to the effect that grass and weeds were growing around this valve box, and that the surface of this strip of neutral ground, while somewhat rough, was practically level with the top of the said curb and the top of said valve box. As to whether or not there were lights which shone on and lighted the neutral ground where this box was located the testimony was conflicting.

The appellee testified that on the night he received his injuries he and two others were in charge of the arrangements for an excursion on the steamer Island Queen, which was lying at the foot of the landing nearly opposite the Clay street entrance; that about nine P. M., accompanied by his wife and sister-in-law, he drove to the Clay street gate, and was there directed by a city policeman to turn south and park his car by the curb described above, in the only available parking place near that point. That at that time many automobiles were parked on the landing; that his wife and sister-in-law alighted from the automobile on the right-hand side thereof, while he opened the door to his left and stepped out onto the curb by which he had parked, and that as he stepped back, supposedly onto the neutral ground, he fell into the concrete valve box which was immediately behind him.

As to his injuries, he testified that when he got out of this box or hole he was badly bruised and suffering intensely; that he was compelled to sit down for awhile until the first shock of the fall passed; that he then joined his wife and went onto the boat and on the excursion trip, but all the while continued to suffer; that when the boat returned about 11:30 P. M. he drove his automobile to his home and then to a hospital where he was examined

by a physician and put to bed. That he remained in the hospital for five days, and after that time returned to the hospital a number of times for treatment, and was unable to return to his work for about two and a half or three weeks; and that he continued to suffer pain and discomfort in his side and back up to the time of the trial.

The physician who treated the appellee testified that when he came to the hospital he had contusions or bruises of the chest and two broken ribs, and was suffering considerably; that he strapped up his chest and gave him diathermy treatments to relieve inflammation of the pleura and prevent the development of pneumonia; that after the appellee was discharged from the hospital he treated him at his office a number of times, the last time being about ten days before the trial of this cause, at which time he was still complaining of pain and discomfort in his chest and back. This physician further testified that in his opinion there had been a proper union of the broken ribs, but that following such an injury some pain and discomfort might continue for a long period of time.

The first contention of the appellant is that the peremptory instruction requested by it should have been granted. It is argued that the evidence shows that the sea wall, landing, and drainage system were planned, designed, and constructed by competent engineers; that all necessary warnings, guards, and lights were provided at and near the said valve box for the protection of persons using the paved landing, who were themselves exercising ordinary care for their own safety, and for the protection of any person using ordinary care at the location of the box on the neutral ground, a place not necessary to be used, and not intended for use, by the public when visiting the landing on pleasure or business, and therefore there was no negligence on the part of the appellant.

The legal duty of a city in reference to its landings is the same as that resting on it in reference to its streets,

and that is to use ordinary care to keep them in a reasonably safe condition, and free from unsafe and dangerous conditions, for the use of persons exercising ordinary care and prudence. And, as said in McComb City v. Hayman, 124 Miss. 525, 87 So. 11, a city is under no duty to fill up or guard a gully or excavation that may be near the street or traveled part thereof, unless it is in such close proximity thereto that a traveler passing along the street and using ordinary care is in danger of falling or being thrown into the gully or excavation and being injured thereby. Conceding, for the purpose of this decision only, that the fact that portions of the landing were paved was notice to the public that the unpaved portion thereof, or neutral ground, was not intended for the use of the public, and that the city was therefore relieved of the duty of maintaining the entire neutral ground in a reasonably safe condition for persons who might go thereon, it does not follow that it was not negligence on its part to construct this large excavation and concrete box, without any grating or other covering on it, in such close proximity to the paved way as to be dangerous to persons using the landing and slightly deviating from the paved way. There was testimony that this box was somewhat concealed by the growth of grass and weeds, and the testimony was conflicting as to whether the location of the box was lighted, and as to whether or not the box was open for its entire depth of four and a half feet or more. Under all the facts, we think it was proper to submit to the jury the question of whether or not the city was negligent in constructing and maintaining this box in the manner set forth herein.

The appellant next complains of an instruction reading as follows: "The Court instructs the jury that one lawfully using the paved part of the driveways, or landings, of the city, has the right to assume, and to act on the assumption, that the same is reasonably safe for the purpose of driving, or parking, thereon, and alighting from

their cars, and free from all dangerous, or unsafe places, not only on the paved parts but the unpaved parts in such close proximity thereto as to be dangerous to one using the paved parts for travel, or parking thereon, or alighting from cars, while exercising such care as an ordinarily prudent person would have used under similar circumstances.'' This instruction is in line with the views already herein expressed as to the duty of the city in reference to dangerous excavations and pitfalls in close proximity to the paved way. In fact, upon the point, the instruction restricts rather than enlarges the duty which the appellant owed to the public in reference to the location and character of this excavation or box. The cause was submitted to the jury under instructions which fully, fairly, and accurately stated the legal principles applicable to the facts; and upon the question of liability we find no reversible error.

We think, however, that the verdict is grossly excessive. The proof shows that appellee's expenses for medical and hospital bills and his total loss of earnings were less than five hundred dollars. The proof is to the effect that the injuries were not permanent, and although the appellee suffered severe pain at the time of the injury, and it was testified that he still suffers slight pain and discomfort, we think a judgment in excess of three thousand five hundred dollars should not be permitted to stand. If the appellee will enter a remittitur of two thousand five hundred dollars, the judgment of the court below will be affirmed for three thousand five hundred dollars; otherwise it will be reversed in so far as it fixes the amount to be recovered, and the cause remanded for trial on the question of damages only.

Affirmed, with remittitur.