City of Vicksburg *v.* Patrick Hennessy.

1. Defective Street-crossing.   *Injury to pedestrian.   Contributory negligence.*
  At the crossing of two streets in a city, the sidewalk of one was five feet perpendicularly above that of the other, while the carriage-ways were nearly on a level.   To make the crossing · safe for pedestrians, the higher sidewalk was widened, and near its outer edge two commodious steps leading into the lower street were so placed that one who did not turn and go down the steps, but kept straight on, would walk off the end of the upper pavement, which was unprotected by any fence or guard.   One night, when a lamp, usually kept burning there, was out, a pedestrian was on the point of walking off without thinking, when, his companion calling attention to the fact, he turned to descend the steps, but stumbled over a gutter, fell upon the steps and was injured.   *Held*, that he was guilty of contributory negligence in his manner of stepping across that part of the pavement, which lacked nothing to make it reasonably safe for persons of ordinary prudence, and that a judgment against the city on these facts was erroneous.

2. Same.   *Where injury results from defect and plaintiff's negligence.*
  Under the same state of case, had the pedestrian not been warned, and in a state of oblivion walked over the precipitous descent, *quære*, whether the city would have been liable ?   *Semble*, that it would not, unless momentary forgetfulness is not inconsistent with ordinary prudence.

3. Same.   *Contributory negligence.   Burden of proof.*
  Remissness in the city authorities will not relieve one injured by a defective street from showing affirmatively his freedom from contributory negligence.

4. Same.   *Natural obstacles.   Duty of city.*
  Municipal corporations are not required to furnish the best method of passing natural obstacles, but only to make their streets reasonably safe for persons of ordinary prudence.

5. SAME.   *Contributory negligence.*

One knowing the means provided by a city to avoid danger to a traveller in its streets cannot complain of an injury sustained by reason of his neglect to use them.

ERROR to the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

*Buck & Clark,* for the plaintiff in error.

1. The injury proceeded not from the defect complained of, the want of a railing on the sidewalk at the precipitous descent, but from a gutter, which was not dangerous but useful and essential.

2. If Patrick was duly sober, his inexcusable negligence was the chief cause of the accident; and, under such circumstances, the city is not liable.  *Lane* v. *Crombie,* 12 Pick. 177 ; *Moore* v. *Abbot,* 32 Maine, 46 ; *Rusch* v. *Davenport,* 6 Iowa, 443 ; *Mount Vernon* v. *Dusouchett,* 2 Ind. 586 ; *Farmer* v. *Concord,* 2 N. H. 392 ;. *Aurora* v. *Pulfer,* 56 Ill. 270.

3. The difference in level of the streets was a natural obstacle.  The city was only bound to provide safe means for getting around it.   2 Dillon on Municipal Corporations, § 789; *Centralia* v. *Krouse,* 64 Ill. 19.   The city is not an insurer of the safety of passengers on its streets.   2 Dillon on Municipal Corporations, § 753 ; *Clark* v. *Chicago,* 4 Bissell, 486 ; *Hughes* v. *Baltimore,* Taney, 243.   Persons acquainted with the dangers of the locality must use reasonable care to avoid injury.

*Shelton & Lea,* for the defendant in error.

1. The verdict should not be disturbed, according to the settled rules of this court.  *Lea* v. *Guice,* 13 S. & M. 656; *Drake* v. *Surget,* 36 Miss. 458 ; *Guion* v. *Doherty,* 43 Miss. 538. No objections are made to the instructions of the court, and a reversal is asked on the evidence alone.

2. The question of negligence is under the instructions in the record left with the jury, where it belongs.  *Memphis Railroad* v. *Whitfield,* 44 Miss. 466 ; Wharton on Negligence, § 420, and cases cited in note.

3. Upon the question of damages, we submit that the verdict of the jury falls far short of being compensatory in amount. 36 Miss. 660 ; 42 Miss. 607 ; 44 Miss. 466.

CHALMERS, J., delivered the opinion of the court.

The defendant in error recovered judgment against the city of Vicksburg in the sum of one thousand dollars, on account of injuries sustained by a fall which is alleged to have occurred in consequence of a defect in the streets of the city. The accident happened at the intersection of Market and First East Streets. These streets cross each other at right angles; but the natural level of Market Street, on its western side, is four or five feet higher than that of First East Street, so that a person walking along the pavement on the western side of Market Street in a northerly direction is brought to an abrupt declivity of five feet in depth upon his arrival at First East Street. The declivity is much less, however, a few feet out from the pavement towards the carriage-way portion of Market Street. Instead, therefore, of constructing steps directly down from the northern end of the pavement, the city authorities, about ten years ago, caused the pavement to be widened a few feet, until its eastern edge reached out to ground where the descent was less, and there constructed steps leading down to the lower level of First East Street.

The advantage of the arrangement was that the ascending or descending pedestrian only walked up or down two steps, instead of five or six, as he would have been compelled to do if the steps had been built directly in front of the northern end of the pavement. Its effect was that the pedestrian walked north up to the declivity, and then facing east, as if about to cross to the other side of Market Street, took about two paces east, then faced north again and walked down two broad brick steps into First East Street.

The arrangement was a good one, — perhaps the best that could have been made; but it had one serious defect. No railing or obstruction of any kind was erected to prevent the wayfarer from walking or falling down the steep declivity at the end of the pavement, which he would inevitably do if he continued north instead of turning to the east. Of this there was no danger in the daytime, nor at night, so long as the lamp placed immediately at the spot was kept burning. Even in the absence of a light, there should have been no danger to a man of ordinary prudence, well acquainted with the locality,

unless the night was so dark as to prevent him from perceiving that he had arrived at or near the intersection of the streets. The city had a contract with the gas company to keep its lamps lit; but whether this particular lamp had been lit on the night of the accident and extinguished by the wind, or whether it had been neglected by the lamp-lighter, is uncertain.

The defendant in error had lived for six years in the immediate neighborhood, and in sight of the locality, and was consequently well acquainted with it. On the evening of Dec. 24, 1870, he walked with a friend along the west side of Market Street towards this declivity, intending to cross First East Street, and " was not thinking," as he says, of the dangerous character of the place. The lamp was not burning. He says, " When I got near to the abrupt termination (of the pavement), my attention was called to it (by his friend), and I then attempted to reach the steps; but there was a projection of the brickwork of the gutter there, and I struck my foot against it in the dark, and fell down over the steps and the abrupt place. It is fully five feet (down to the level of First East Street) at the point of the abrupt termination of the pavement, but I did not fall over three feet, as I caught on the steps." As before remarked, the only defect in the arrangements made by the city for descending this natural declivity was the failure to erect a railing at the termination of the pavement, in order to prevent persons from continuing directly north, and thereby precipitating themselves below. In all other respects, as testified by various witnesses, the arrangements were excellent.

. If we could consider the proof as showing that the defendant in error did, by reason of the absence of such railing, and in a moment of forgetfulness, walk or fall down this abrupt descent, the question presented would be this, Where the municipal authorities have arranged a safe and convenient means of avoiding a place naturally dangerous, but have omitted to fence off the traveller from the straightforward and perilous path, will they be responsible to a person well acquainted with the locality and with the means which have been provided for escaping the danger, who, in a moment of

oblivion, pursues the path of peril, and sustains injuries thereby ?

The universal rule in this class of cases is that the injury must proceed wholly and solely from the defective highway, that the plaintiff must be entirely free from any negligence which contributed to the result, and that the burden of showing affirmatively that he exercised at least ordinary care and prudence is upon him.   Unless he establishes this he must fail, notwithstanding he has shown the greatest remissness on the part of the corporate authorities. *Lane* v. *Crombie*, 12 Pick. 177 ; *Moore* v. *Abbot*, 32 Maine, 46 ; *Rusch* v. *Davenport*, 6 Iowa, 443.   It would seem from this universally recognized principle that the interrogatory propounded above must be answered in the negative, unless we can say that momentary forgetfulness is not inconsistent with ordinary prudence.

A decision of the question is not necessary, because as we understand the plaintiff's own testimony, the absence of the railing (which was the only fault of which the city authorities were guilty) had nothing to do with the injuries sustained. He says that he did not fall from the abrupt termination of the pavement where the descent was five feet, but that he fell across the steps where it was only three (other testimony shows it to be less than three at the steps).   Now, in order to reach and fall across the steps, he must, before he commenced to fall, have already faced east away from the unprotected declivity, and in the direction of the steps.   If he had fallen over the precipitous descent, he would have fallen due north.   As it was, he fell east, or north-east.   This is rendered certain by his statement that he attempted to reach the steps, but struck his foot against a projection of the brickwork of the gutter, " and fell down over the steps."   His fall, then, was produced, not by the absence of a railing, but by his stumbling over the gutter ; and he fell, not down the precipice which the city had failed to guard, but over the broad and convenient steps which it had provided for making a safe descent.   All the witnesses testify that these steps were well built, of convenient and easy access, in no wise obstructed by the small gutter that ran through the pavement for the purpose of draining it, just between the original and the widened portions of it.   No

witness, save the defendant in error, speaks of any projection in the brickwork of this gutter. We conclude, therefore, that the fall proceeded in no manner from the absence of a railing, but from some clumsiness on the part of the.defendant in error in stepping across that portion of the pavement which lacked nothing to render it reasonably safe for people of ordinary prudence.

Municipal corporations are not liable for every accident that may happen in their streets. They are not insurers of the safety of those who use them. Their duty is discharged when they have made them reasonably safe for people of ordinary prudence ; nor are they required to furnish the best possible method of passing around natural obstacles. Especially will those be estopped from complaining who, well knowing the means which have been provided for avoiding danger, have sustained injuries in consequence of their own neglect to avail themselves of them. 2 Dillon on Municipal Corporations (2d ed.), 917, and cases cited in note 1; *Raymond* v. *Lowell,* 6 Cushing, 524.

*Judgment reversed and cause remanded.*