Dent v. Town of Mendenhall.[*]

(Division B. May 11, 1925.)

[104 So. 82. No. 24668.]

1. Negligence. *Instruction that unlawful speed of automobile approaching bridge would bar recovery bad.*

Instruction, in action for death from automobile accident, based on unsafe condition where street and bridge joined, that there could be no recovery if bridge was approached at a speed "exceeding

ten miles per hour," *held* bad, as such speed, if in violation of ordinance or statute, would only amount to contributory negligence, which would not bar recovery, unless it was the sole proximate cause of accident.

·2. TRIAL. *Instruction, in street accident case, bad, as ignoring condition likely to deceive traveler.*

Instruction, in action for accident from automobile going into creek where bridge and street on embankment met, that, though the jury may believe the road was twenty feet wide, and the bridge only twelve feet wide, without railing on the side of the accident, and with grass growing at the roadside, there could be no recovery if they believe there was sufficient room on the bridge for a reasonably prudent person, driving at lawful speed, with car in good condition and under control, to have crossed safely, *held* erroneous, as ignoring the condition likely to deceive a traveler as to the width of the bridge.

3. NEGLIGENCE. *Contributory negligence goes only to diminution of damages.*

Any contributory negligence of driver in not observing, through obscuring weeds, dangerous condition in that bridge was narrower than street where they joined, would not bar recovery, but only go to diminish damages, if town was guilty of any substantial negligence proximate and contributory to the accident.

4. BANKRUPTCY. *Cause of action for death not passing to trustee.*

Personal cause of action for wrongful death does not pass to trustee in bankruptcy.

---

*Headnotes 1.  Negligence, 29 Cyc., p. 561; 2. Trial, 38 Cyc., p. 1632; 3. Negligence, 29 Cyc., p. 561; 4. Bankruptcy, 7 C. J., Section 220; As to whether right of action for personal injuries passes to trustee in bankruptcy or assignee in insolvency, see notes in 44 L. R. A. 180, 12 L. R. A. (N. S.) 1273, 3 R. C. L., p. 218.

APPEAL from circuit court of Simpson county.
HON. W. L. CRANFORD, Judge.

Action by John Dent against the Town of Mendenhall. Judgment for defendant, and plaintiff appeals. Reversed and remanded for new trial.

*E. L. Dent,* for appellant.

This is an appeal from the circuit court of Simpson county. Appellant brought suit against the municipal

corporation, the town of Mendenhall, the appellee, to recover damages resulting from the injuries and death of his wife, alleged to have been caused by the negligence in construction and maintenance of a bridge on one of the most populous and generally used streets in the town; that his wife was driving an automobile over the bridge with due care when it slipped or fell from the bridge turning over falling several feet into a ditch or hole thereby mortally wounding her.

With the uncontradicted testimony as to the width of the bridge—twelve feet—with no banister or guard on north side and the banister on south side leaning toward center of bridge, and this bridge in this condition in an eighteen or twenty foot gravel street, the most populous and frequented street and bridge in the town of Mendenhall, and notwithstanding our comparative negligence statute, the following is a fair sample of the instructions given appellee in the court below: "The court instructs the jury for the town of Mendenhall the defendant, that if you believe from the evidence in this case that it has been shown that the bridge which Mrs. Dent was attempting to cross at the time she lost her life was of sufficient width to admit the free and safe passage of her car, if said car was under good control by her and being cautiously operated or driven by her, then you must find for the defendant."

And the one following: "The court charges the jury for the defendant that though you may believe by a preponderance of the evidence in this case that the said bridge was only twelve feet wide, and that the road approaching it was several feet wider, and that there was no banister on the north side of said bridge, and you may further believe from the evidence that the post on the south side of the bridge was leaning toward the center of the bridge, and there was grass growing on the north side abutting the bridge, still you cannot find for the plaintiff, if you further believe from the evidence that there was sufficient room on the bridge for a reasonably prudent person driving a car not exceeding ten

miles an hour with the car in good condition and under control to have crossed the bridge safely.'' These contravene the statute, section 502, Hemingway's Code.

There was no controversy about the bridge being only twelve feet wide, and the road approaching it several feet wider. There was no banister on the north side, the post on the south side was leaning towards the center, and there was grass or weeds on the north side on the edge of the bridge and street.

It appears that the attorneys for the town and trial court had in mind if the bridge was wide enough for a car to pass over, and that they did pass over, that the bridge was thereby reasonably safe and plaintiff could not recover. We shall now for convenience quote some of the numerous authorities announcing the law governing liability in this case which will show the many errors of the learned circuit judge in the trial of the case in the lower court. *Saxon* v. *Town of Houlka* (Miss.), 65 So. 124.

Long before the enactment of our comparative negligence statute, in 1896, in *City of Natchez* v. *Shields,* 74 Miss. 871, it was held: ''A municipality is liable for an injury suffered by the occupant of a carriage because of defects in its street of which it had due notice.'' See, also, *Caldwell et al.* v. *George,* 96 Miss. 484, 50 So. 631.

The condition of the bridge being both proven and confessed, and the knowledge of its condition admitted on the part of the officers of the town, the instruction about the width of the street for use was error, and for that alone the case should be reversed. That instruction is also condemned by the law announced in *Higginbottom* v. *Village of Burnsville,* 74 So. 133.

The instruction was written doubtless on the doctrine announced in *Gulfport & Miss. Coast Traction Co. et al.* v. *Manuel et al.,* 123 Miss. 266, 85 So. 308, which we think is an entirely different case from the one at bar. In that case ''The pole which caused the death of Manuel was situated outside of the traveled portion of the street.''

Justice HOLDEN well said in *McWhorter* v. *Draughn et al.*, 102 So. 567: "The open road is the great privilege given to every traveler in our state and nation, and he may recover for injuries received on account of its wrongful obstruction."

A peremptory instruction was given in the case of Vicksburg v. Harralson, 101 So. 713, on liability and we think the case at bar is a much stronger case for a peremptory instruction.

*J. D. Thames, A. W. Dent* and *Hirsh, Dent & Landau,* also for appellant.

Instruction No. 1 was given the appellee, as follows: "The court instructs the jury for the town of Mendenhall, the defendant, that if you believe from the evidence in this case that it has been shown that the bridge which Mrs. Dent was attempting to cross at the time she lost her life was of sufficient width to admit the free and safe passage of the car, if said car was under good control by her and being cautiously operated or driven by her, then you must find for the defendant."

This instruction does not state the law correctly according to the well-established rules and announcements of this court. Mrs. Dent, at the time she was killed, had a lawful right to assume that the street and all parts thereof was reasonably safe for the purpose for which she was using it. She did not have to go to any particular side of the bridge to cross in order to keep the gravel from slipping or sliding off the bridge and carrying her automobile with it. She did not have to look for unguarded holes and pitfalls in the street or on the bridge and steer her car to the left against a leaning banister in order to keep her car from falling in the unguarded hole on the right-hand side, as this instruction required her to do. *Brahan* v. *Meridian Light & Ry. Co.*, 121 Miss. 294.

Mrs. Dent had a right to a reasonably safe street while she was travelling in the town of Mendenhall, and

no unbiased mind on the evidence in this record can draw the conclusion that the bridge off of which she is shown to have fallen, can say that this bridge and its approaches were reasonably safe for any purpose, however carefully they may have been used. *Jordan* v. *City of Lexington,* 133 Miss. 440.

The court will observe that one instruction granted assumes that the appellee may have been negligent in having a bridge only twelve feet wide, and that the street approaching it was several feet wider, and that there was no banister on the right-hand side, the side off of which she fell, and that the post on the south side of the bridge was leaning toward the center of the bridge and that there was grass growing on the north side of the bridge, yet this negligence did not entitle the appellant to recover, if there was sufficient room on the bridge for a reasonably prudent person driving a car, not exceeding ten miles an hour with the car in good condition and under control to have crossed the bridge.

There was no ordinance introduced in the trial of this case to show that one using the streets of Mendenhall should not drive over ten miles an hour. No ordinance at all was introduced relating to the speed of automobiles in approaching, going on, over or across the bridge in question on said street or indeed any bridge on any street in the town of Mendenhall. We assume appellee intended to invoke section 5777 of Hemingway's Code.

This section has no application to speed in approaching bridges in a municipality. Therefore, it was error for appellee to invoke this statute. If, however, we shall be mistaken in this, there can be no question but that it was error to give this instruction in this form. If the decedent was driving over ten miles an hour and did not have her car under control, this would be no bar to appellant's right to recover under our contributory negligence statute, sections 502, 503, Hemingway's Code.

The above instruction eliminated absolutely all the law under which liability may be fixed against a municipality for personal injury sustained as a proximate re-

sult of a city's negligence in failing to maintain reasonably safe streets or bridges in the municipality. For this error, in granting this instruction, this case should be reversed.

This record, we submit, is honeycombed with glaring errors and mistakes.

*Hilton & Hilton,* for appellee.

BRIEF ON CROSS-APPEAL. The first proposition to be settled in considering this question is whether or not a right of action for death is a chose in action and assignable. Under section 70 of the Bankruptcy Acts 1898, subsection 5, the trustee is vested with all "property which prior to the filing of the petition he (meaning bankrupt) could by any means have transferred or which might have been levied upon under judicial process against him." So the test of the question is: Was this claim of the appellant for the death of his wife property which he could have sold or transferred or could it have been levied upon. The answer to this question is found by the statutes of Mississippi. See Hemingway's Code, sections 496, 497 and 498, which specifically provide that choses in action such as these may be sold or assigned. Also Hemingway's Code, sections 2972, 2975 and 2976, provides how choses in action may be levied upon and sold under execution.

Also the latest announcement of this court is found in *Anderson* v. *Kelley,* 99 So. 382, in which it is specifically held that an assignment of a claim for damages is valid and cites other decisions of this court as authority. We think that this sufficiently established this claim, here sued upon, to be such property as would go into the hands of the trustee for the creditors in bankruptcy.

If, then, this was property which should have been scheduled and was properly an item of the bankrupt's estate, let us turn to the authorities and see what right the appellant had to maintain this cause of action. *In re*

*Burnstine,* 131 Fed. 518; *Juden* v. *Nebham,* 60 So. 45; *Jones* v. *Barnes,* 66 So. 212.

So it seems to us to be clearly settled that the appellant had no right of action in this suit and the demurrer in the court below should have been overruled. See, Collier on Bankruptcy (6 Ed.), p. 95, sec. 6.

BRIEF FOR APPELLEE. With reference to instructions complained of, both those given for appellee and those refused for the defendant, we will content ourselves with citing some authority. *City of Vicksburg* v. *Hennessy,* 54 Miss. 391, held that where the injured party had lived for six years near the locality where he was injured, that "the universal rule in this class of cases is that the injury must proceed wholly and solely from the defective highway." See, also, *Walker* v. *Vicksburg,* 15 So. 132; *Nesbitt* v. *City of Greenville,* 10 So. 452; *Gulfport & Mississippi Coast Traction Co.* v. *Manuel et al.,* 85 So. 308; *McComb City* v. *Hayman,* 87 So. 11.

The statutes of this state, section 5777, Hemingway's Code, limit the speed of all automobiles upon approaching a bridge levee, sharp curve or deep descent, and also in traversing said bridge not to exceed ten miles an hour, and also requires persons operating the motor vehicle to have it under control. The proof for defendant showed that she was exceeding this speed when she approached and struck the bridge.

In passing upon a case very similar to this, the case of *Gulfport & Miss. Coast Traction Co.* v. *Manuel, supra,* in the last paragraph of the opinion in discussing the effect of the speed of the automobile, this court said: "The statutes of the state limit the speed of motor vehicles on highways, situated as this one was to fifteen miles per hour, and it is manifest from the record that the injury was caused by the recklessness of the deceased in undertaking to round a curve, or turn at an intersection of streets, at a high and dangerous rate of speed." See, too, *Ulmer* v. *Pistole,* 76 So. 522.

Counsel complained that instructions were given for the appellee in substance telling the jury that if the

bridge was of sufficient width to admit a free and safe passage of her car if the car was under good control and being cautiously operated and driven by her, the verdict should be for the defendant.

The two cases last above referred to announce this principle of law and place the burden only on the municipality to keep its streets and bridge of sufficient width to afford a reasonably safe passage to people who are properly operating their vehicles, and we can see no error in the instructions.

Counsel complains that said instructions contravene section 502, Hemingway's Code, in the comparative negligence statute. We think not for two reasons. First, counsel complained of instruction telling the jury that if you believe certain facts, to-wit: that the bridge was of sufficient width to provide a free and safe passage with a car under control; then the town is guilty of no negligence. This is true under all the laws of this state, as that is the only duty required of the town.

Our second reason for saying these instructions do not contravene the comparative negligence statute is that taking all the instructions in the case, the jury was told for appellant that if the town had not so maintained the bridge that a reasonably safe passage was afforded, it was guilty of negligence.

And also the jury was told by instructions for appellant, that even though Mrs. Dent may have been driving a car out of repair and that she may have been negligent in driving on the bridge, still if the appellee was negligent in its construction or maintenance of said bridge in a reasonably safe condition for the use of the traveling public, and if such negligence contributed to the injury, then they should find for the plaintiff.

The jury was instructed on the comparative negligence statute by this instruction as strongly as it could have been drawn, and when the instructions for the appellant and the appellee are considered as a whole, it will be seen that each set of instructions presented to the jury their theory of the case, all of them being based on proven

facts and left to the jury to apply the law to the proven facts.

*J. D. Thames, E. L. Dent* and *Hirsch, Dent & Landau,* for appellant, in reply.

The appellant suggests that the court below erred in sustaining the demurrer of the appellant to his special plea in bar relating to the bankruptcy proceeding set up in said plea. This action was brought by appellant for the death of his wife, under section 501, Hemingway's Code. It is an action for personal injuries producing the death of his wife. Personal actions of this kind under the Bankruptcy Act do not pass to the trustee in bankruptcy. Act, July 1, 1898, chapter 541, section 70a, subds. 5, 6; 30 Stat. at L. 565, U. S. Comp. Stat. 1901, section 3451.

This is an action in tort for personal injuries to, and the death of, his wife, and the federal courts with practical uniformity hold that actions of this kind do not pass to the trustee in bankruptcy. 7 C. J., 131; *Hanson* v. *First National Bank of Center,* 128 S. W. 1147; *Sibley* v. *Nason,* 12 L. R. A. (N. S.); 1173 and note.

A right of action in tort for fraud and deceit is not an asset which will pass to the assignee in bankruptcy. (1793) *Stanly* v. *Duhurst,* 2 Root, 52; (1868) *In re Crockett,* Fed. Cas. No. 3402 (a Ben. 514); (1882) *Tufts* v. *Matthews,* 10 Fed. 609. And an assignment in bankruptcy does not pass to the assignee a right of action founded on tort. *Bird* v. *Hempstead,* 3 Day, 272, 3 Am. Dec. 269.

A claim for damages for personal injuries resulting to a passenger from the negligence of a railroad company, the action for which was pending at the time of a filing of a petition in bankruptcy against the claimant, does not pass to the assignee in bankruptcy under the bankrupt act. *Rand* v. *Fleishman,* 6 Wkly. Notes of Cas., 497.

The right to maintain an action for malicious prosecution is not such a chose in action as will pass to the plaintiff's general assignee in bankruptcy under the bankrupt law. *Noonan* v. *Orton,* 34 Wis. 259, 17 Am. Rep. 441; *Epstein* v. *Hanverker,* 116 Pa. 789; *Valentine K. Irion* v. *Knapp,* 43 L. R. A. (N. S.), 940 and note; *Cleland* v. *Anderson,* 5 L. R. A. (N. S.), 138.

It will thus be seen that the court below correctly held that plea in bar of this action was not good, and therefore properly sustained the demurrer of the appellant to said plea.

Argued orally by *R. L. Dent,* for appellant, and *R. T. Hilton,* for appellee.

*Holden, P. J.,* delivered the opinion of the court.

This is a suit by the appellant, Joe Dent, against the town of Mendenhall to recover damages for the death of his wife, who was killed through appellee's alleged negligence in maintaining an unsafe street and bridge in the municipality over which Mrs. Dent was driving in an automobile when the car was precipitated into the ditch or creek, causing her death. The question of negligence *vel non* of the municipality was submitted to the jury, which rendered a verdict in favor of the defendant. Hence this appeal.

The case of the appellant, as shown by the evidence in the record, is substantially as follows: The town of Mendenhall constructed and maintained a street running east and west, and maintained a bridge thereon over a small stream. The street was about twenty feet wide and on an embankment about six feet high, where the bridge was located. The bridge across the creek was twelve feet wide and about twenty feet long, and was constructed in the middle of the street connecting the two embankments on either side of the creek. The embankment thus extended out four feet north and south at the east end of the bridge. These earth abutments extending four feet

from the bridge were grown up in grass and weeds, making the width of the bridge difficult to distinguish by a person approaching in a vehicle.

Mrs. Dent was traveling from east to west on the right-hand, or north, side of the road. The banister railing on the north side of the bridge was gone and the banister rail on the south side was defective and leaned over at the top for about a foot toward the north. With the grass and weeds growing on the four-foot extension on either side of the embankment, which was the abutment to the bridge, and there being no railing on the north side of the bridge to warn the traveler as to the width of the bridge or the abrupt four-foot jump off of the embankment into the creek, Mrs. Dent attempted to drive upon the bridge, and when the left wheels of her car struck the floor of the bridge the right wheels went off of the embankment, the four-foot extended abutment, the car was precipitated into the creek, and she was killed.

According to the testimony introduced by the appellant, the grass and weeds had grown on and around the side of the embankment up to the floor of the bridge, and the four-foot extension of the road being unguarded, the railing gone, the dangerous situation could not be observed by a person approaching the bridge until so near that it would be impossible to stop the car in time to prevent going over the north side or edge of the bridge or the extended obscured embankment.

A witness by the name of Mrs. Fred Crain, who was in the car with Mrs. Dent when it fell into the creek, testified in part as to the cause of Mrs. Dent's death. She said:

"We started from the courthouse . . . and had gone from the bank to the bridge in Mendenhall where Belle (Mrs. Dent) was killed. She was driving the car slowly along, having perfect control of the car, and we had gotten on the bridge, which seemed to me like a death-trap, about twelve feet wide, without banisters on one side, and the weeds had grown up on the side of the

bridge on which the car turned over and on which there
was no banister. We could not tell where the end of the
bridge was because it was covered with weeds. We were
on the edge of the bridge, or approaching the bridge,
when she said, "This is a dangerous place,' and I never
spoke a word, and she had not more than gotten that out
of her mouth before the car slipped off of the bridge and
turned over. The right front wheel slipped off of the
north side of the bridge. Belle fell out of .the car when
the car went over, and, of course, the car fell on her and
··shed the life out of her."

This witness further testified that Mrs. Dent was driv-
ing on the right side of the road, and was a careful driv-
er, and that, on account of the weeds and the condition
of the bridge, it was impossible to see the dangerous
situation surrounding the approach to and the bridge on
its northeast side; that you could not tell where the north
edge of the bridge connected with the embankment of the
road until you were so close that the car could not be
stopped. She said the steering wheel of the car was in
good condition and that Mrs. Dent was driving it in a
careful and proper manner and had it under control at
the time she approached the bridge.

There was a sharp conflict in the testimony given for
the plaintiff and for the defendant at the trial. The evi-
dence offered by the defendant went to show that the
death of Mrs. Dent was due solely to her own negligence
in approaching the bridge with the car not under control
and with a defective steering wheel; also that she was
operating the car at a high rate of speed and that she
could have crossed the bridge in safety if she had been
using due care in operating the automobile.

The main ground urged by the appellant for reversal
is that the lower court erred in granting certain instruc-
tions to the defendant, particularly instruction No. 2,
which we shall here set out and discuss. This instruc-
tion is as follows:

"The court charges the jury for the defendant that,
though you may believe by a preponderance of the evi-

dence in this case that the said bridge was only twelve feet wide, and that the road approaching it was several feet wider, and that there was no banister on the north side of said bridge, and you may further believe from the evidence that the post on the south side of the bridge was leaning toward the center of the bridge, and there was grass growing on the north side abutting the bridge, still you cannot find for the plaintiff, if you further believe from the evidence that there was sufficient room on the bridge for a reasonable prudent person driving a car not exceeding ten miles an hour with the car in good condition and under control to have crossed the bridge safely.''

We think it was error for the court to give the above instruction, for two reasons. First, it was error to tell the jury, in effect, that there could be no recovery if the deceased approached the bridge at rate of speed ''exceeding ten miles an hour,'' because this record does not show there was any ordinance of the municipality providing the speed limit in approaching bridges should be ten miles per hour. But, if it be conceded there was such an ordinance, or that the state law as to speed limit in approaching bridges is applicable here, still it only amounted to contributory negligence, and would not of itself bar recovery, unless the unlawful speed was the sole proximate cause of the injury. And second, the instruction is wrong and harmful in this, that it tells the jury that, even though they may believe that the road was twenty feet wide and the bridge only twelve feet wide, and there was no banister on the north side, and that the post on the south side was leaning toward the center of the bridge, and that there was grass growing on the north side abutting the bridge, still they could not find for the plaintiff, if they further believed that there was sufficient room on the bridge for a reasonably prudent person driving at ten miles an hour with a car in good condition and under control ''to have crossed the bridge safely.''

The instruction ignores the dangerous condition due to the weeds growing on the embankment hiding the four-

foot extension of the road where it abuts the bridge, which had no rail on it, an unsafe condition likely to deceive the traveler who might not, with reasonable care, be able to ascertain the outer or north edge of the bridge before he had approached too far to stop his car.

To put it in another way, the instruction is erroneous in that it denies to the plaintiff the right to assume that the bridge and the approach thereto were in a reasonably safe condition for the public travel. Of course, the bridge was wide enough for the deceased to have crossed it safely if she had gone over the south or middle part of it, but the test is whether or not the roadway, including the bridge and the approach to it, was reasonably safe for a person using ordinary care in going over it. Extraordinary care is not required. *McWhorter* v. *Draughn* (Miss.), 102 So. 567; *Higginbottom* v. *Burnsville,* 113 Miss. 219, 74 So. 133; *Jordan* v. *Lexington,* 133 Miss. 440, 97 So. 758; *Saxon* v. *Houlka,* 107 Miss. 161, 65 So. 124.

The deceased may have been guilty of contributory negligence in failing to look through or over the weeds and observe the unguarded edge of the bridge on the north side which had no banister railing on it, yet the failure to have seen the danger would amount to no more than contributory negligence, which would go only to the diminishment of the damages.

The deceased may have previously known that the bridge was only twelve feet wide and the road twenty feet wide and that the four-foot abutments on either side were grown up in weeds, and that, if she approached the bridge too far on the north side of the road, she would be precipitated into the creek, yet this would not bar the right to recovery if the municipality was guilty of any substantial negligence, proximate and contributing, in failing to maintain the street and bridge in a reasonably safe condition for the public travel. And this last question should have been submitted to the jury under proper instruction, because the evidence is conflicting in that regard.

If instruction No. 2 had not told the jury that the speed of more than ten miles an hour would defeat recovery, and had instructed it that, if the sole and proximate cause of the injury was the negligence of the deceased with reference to the manner in which she drove the car, then the jury would have been properly instructed. But the instruction does not do this. It eliminates the question as to whether or not the roadway and bridge were maintained in a reasonably safe condition for the purpose of travel, and directs the jury to find for the defendant if the deceased could have safely crossed the bridge, even though the condition at the bridge was dangerous, and was not reasonably safe for the public travel.

We think this instruction was erroneous and prejudicial to the plaintiff's case, and must result in a reversal and a new trial.

There is another instruction complained of, but we deem it unnecessary to discuss it, because of the reversal for the error in the above instruction, and the second complaint may not arise again.

But the appellee contends that, even though the instructions are wrong, yet the case should be dismissed because the appellant Joe Dent was a bankrupt at the time of the filling of the suit, and, for that reason, he cannot prosecute the action because it can only be maintained by the trustee in bankruptcy.

We do not think the contention is sound in this case for several reasons, but we shall mention only one, and that is that personal actions of this kind in tort do not pass to the trustee in bankruptcy. *Hanson* v. *First National Bank of Center,* 61 Tex. Civ. App. 18, 128 S. W. 1147; *Sibley* v. *Nason,* 196 Mass. 125, 81 N. E. 887, 12 L. R. A. (N. S.) 1173, 124 Am. St. Rep. 520, 12 Ann. Cas. 938; *Cleland* v. *Anderson,* 66 Neb. 252, 92 N. W. 306, 96 N. W. 212, 98 N. W. 1075, 5 L. R. A. (N. S.) 138. We think it unnecessary to discuss the question of whether or not, if our view above is wrong, the suit may be prosecuted by appellant for the benefit of the trustee in bank-

ruptcy, or whether the trustee may not intervene at some junctione in the proceedings.

In view of the conclusions reached above, the judgment of the lower court is reversed, and the case remanded for a new trial.

*Reversed and remanded.*

ANDERSON, J. (concurring). I concur in the reversal of this case alone upon the ground of the speed limit clause in the latter part of instruction No. 2. Because of that clause, in my opinion, the jury were authorized to take the instruction to mean that, if Mrs. Dent was exceeding in speed ten miles an hour, they should return a verdict for appellee. I do not see any other fault in the instruction. And, if it be true that the instruction is faulty in any other respect, the error was cured by a reasonable interpretation of all the instructions taken together.