MAXEDON *v.* CITY OF CORINTH.

(Division A. Dec. 2, 1929.)

[124 So. 795. No. 28055.]

Ely B. Mitchell, of Corinth, for appellant.

W. H. Kier and W. C. Sweat, both of Corinth, for appellee.

Argued orally by **Ely B. Mitchell,** for appellant, and by **W. C. Sweat** and **W. H. Kier,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Lyla Fern Maxedon, a girl about six years of age, by her mother and next friend, Mrs. A. B. Maxedon, sued the city of Corinth to recover damages for injuries alleged to have been received by her as a result of having fallen off of a concrete sidewalk to the bottom of a ditch, which the sidewalk crosses, in the said city. The jury returned a verdict for the appellee, the city of Corinth, the court entered judgment thereon accordingly, and the appellant appeals to this court.

In 1926 and 1927 the city of Corinth constructed hard-surface streets, concrete gutters, sidewalks, and culverts along and over Tate street, which runs east and west across the city limits through the southern part of said city.

At the place where this child received her injury there was a creek running from north to south across Tate street near the middle of a block. The creek was about twenty feet wide at the top, and was from six to eight feet deep from the concrete walk which was constructed across it.

Before the improvements were made, there was a plank walk across this creek, which walk was about four feet wide and twenty feet long, with banisters or guardrails on either side of it. The city constructed a ten-foot concrete culvert across this street to convey the water of the ditch. Where the sidewalk crosses this creek, there were metallic cuffs, or pipes, with threads cut thereon imbedded in the concrete, reaching up two or two and one-half inches above the surface of the walk, so that metallic pipes for banisters could be screwed therein. The record shows that one of these cuffs was toward the east, another toward the west, and one in the center, and that the walk remained in this condition without the banisters being attached for several months, until on or about September 15, 1927.

In the daytime in the month of July, 1927, at about five o'clock, the mother of Lyla Fern sent her across this bridge to the home of Mrs. Brown to secure a pair of scissors belonging to Mrs. Maxedon which had been loaned to Mrs. Brown. Mrs. Maxedon saw her little girl, Lyla Fern, and a little Brown girl about the same age standing on the sidewalk over this ditch; she called to her to "hurry up" with the scissors, and the cause of action is based on this statement of Mrs. Maxedon's:

"I told her to go and get my scissors and I didn't know whether she had gone to Mrs. Brown's and was

coming back or not, but I saw her with a little girl and I told her to hurry up with the scissors and she was facing Mrs. Brown's and it seemed like she staggered over something and into the ditch she went backwards."

The proof further showed that the little girl fell upon stones or pieces of concrete which were in the bottom of the ditch, or creek, and that both bones in her arm were broken. Her arm was placed in a cast, and remained in that condition about four weeks.

Mrs. Brown and the occupants of her home consisting of three other witnesses testified that they were eyewitnesses of the accident, and saw the two little girls scuffling, and that in the scuffle one little girl pulled the scissors from the other, and thereby the little Maxedon girl fell from the sidewalk into the ditch. They said she was not at or near the places where the metal cuffs were protruding from the sidewalk.

There was offered in evidence, over the objection of the appellant, three photographs showing the location of the Brown house, the Maxedon house, and the street, and showing the change in the situation by having the rail, or banister, attached to the metal cuffs, and a fill-in so as to reduce the width of the creek on one side. There was no dispute in the record but that there were no banisters attached to the cuffs at the time of the accident, and the photographs were confessedly made after the location had been changed in the particulars to which we have adverted.

The following instructions were given for the defendant, which we have numbered for our own convenience:

(1) "The court further charges the jury for the defendant that the defendant is under no greater duty as regards the safety of its streets for a child than it is for an adult; and if you believe that the said street or walk was at the time of the injury reasonably safe for the use of an adult, while the adult was exercising reasonable care for his safety, then the defendant is not

liable to the plaintiff in any sum, and you will find for the defendant.''

(2) ''The court charges the jury for the defendant that you cannot find for the plaintiff because there was banisters on the old bridge, nor because the city afterwards placed banisters on the new one, unless you believe from the preponderance of the evidence that the bridge at the time of the injury was not safe for persons to travel over in the daytime while in the exercise of due care of his own safety.''

(3) ''The court further instructs the jury for the defendant that if you believe the bridge was safe for persons walking over it while in the exercise of due care for his own safety and that the child would not have been injured except for the scuffling between her and another little girl over the pair of scissors, then you cannot find for the plaintiff and your verdict will be for the defendant.''

The first assignment of error is, ''The court erred in allowing the pictures taken after the conditions were changed to be introduced as evidence.''

While the general rule is that photographs must substantially represent the location at the time of the accident, still in this case these pictures so pronouncedly marked the changes by the addition of the banisters that no injury could possibly have accrued to the appellant by the introduction of the photographs. There was no dispute that the banisters were not constructed at the time of the injury, and the pictures were just as helpful to appellant as to appellee in developing the case; and we think that the pictures substantially represented the location to the jury, and that appellant was not prejudiced by their introduction. See 22 C. J., p. 919, section 1124; also Le Barron v. State, 107 Miss. 633, 65 So. 648.

Second. ''The court erred in refusing to allow the witness W. G. Mitchell to testify what his duties were as Street Commissioner.'' When asked as to his duties,

the court sustained an objection, and stated that his duties were fixed by law. No error can be predicated upon this because no conceivable injury could have been done the appellant, for the court peremptorily instructed the jury that the city had notice of the condition of this sidewalk and bridge.

The third assignment of error is the giving by the court of instruction No. 1 (as numbered above), and the burden of appellant's brief is to the effect that the city owes small children a higher degree of care than it owes to adults, and cites authorities which sustain that position. There is a conflict in the authorities in this country as to the degree of care which a municipality, in the construction of its streets, owes to children who are playing thereon and are injured because of negligence in the construction thereof. See 13 R. C. L., p. 368, section 303, and authorities there cited. Also see Newport News & Old Point Railway Co. v. Clark's Administrator, 6 L. R. A. (N. S.) page 905, and notes thereunder. Some courts hold municipalities to a higher degree of care in this behalf as to children than is required for adults.

However, it is a significant fact that the appellant, in the court below, secured the same announcement of the law from the court in the following instruction:

"The court instructs the jury for the plaintiff that the city owes the same duty to a child as to a grown person to make the streets reasonably safe for children to travel on."

In 13 R. C. L., p. 368, section 303, it is said:

"Children—It is well settled that the duty owing to a child upon the highway is at least equal to that owing to an adult, and so long as the child is a traveler the municipality owes it the same duty of having its streets reasonably safe that it owes to other travelers. Its liability in case a child rightfully in the highway is injured by a defect therein is precisely the same as in the case of

an adult who is injured while free from fault from a like cause.''

In the case of McComb City v. Hayman, 124 Miss. 525, 87 So. 11, 12, the test prevailing in this state both as to adults and to children of tender years is clearly stated. In this case a child six years of age lost her life by falling into a gulley, alleged to be a part of the street, along the side of the street, which gulley had water in it, and in which the child was drowned. There was some suggestion that the location created an attractive nuisance, and that doctrine was invoked. Chief Justice SMITH, as the organ of the court, said:

''The measure of a municipality's duty in the maintenance of its streets is to use ordinary care to keep them in a reasonably safe condition for persons using ordinary care and prudence. Vicksburg v. Hennessy, 54 Miss. 391, 28 Am. Rep. 354; Meridian v. Crook, 109 Miss. 700, 69 So. 182, L. R. A. 1916A, 482; Higginbottom v. Burnsville, 113 Miss. 219, 74 So. 133, *and its liability for an injury to a child caused by a defect in its streets is the same as in the case of an adult injured by such defect while in the exercise of due care. 13 R. C. L. 368.*''

If a child playing in the street is injured and the negligence of the municipality is the proximate cause of the injury, then the municipality will be liable for the damages for injury sustained thereby, but, if the child is injured as proximate result of the manner in which it was playing, and not because of the negligence of the municipality, there clearly would be no liability.

The fourth assignment of error is as to instruction No. 2, and appellant complains because it limits the time to the daytime. Let it be remembered that the injury in this case occurred at five-o'clock in the afternoon on a July day when the sun was shining. Of course, if this injury had occurred in the nighttime, this instruction would have been improper, but instructions may always be drawn to fit the facts of the case, and it is proper to

so adapt the instructions. Appellant cannot complain here because of a situation different from that under which appellant's injury occurred, and so we do not think that error can be predicated upon the instruction for the reason indicated. The question was whether the street, or sidewalk, was in a reasonably safe condition for a person using ordinary care and prudence *"at the time of the injury,"* and it was not a question at issue as to whether the street would be safe at some other time or under some other peculiarly different condition. Dent v. Town of Mendenhall, 139 Miss. 271, 104 So. 82; Jordan v. Lexington, 133 Miss. 440, 97 So. 758.

The fifth assignment of error is the giving of instruction No. 3. Counsel for appellant again invokes and exhibits great diligence in developing the doctrine that municipalities are under duty to keep their streets safe for children while playing therein, and insist that this instruction tells the jury that such is not the duty of municipalities. Our view of the instruction is that it tells the jury the rule as announced in the Hayman case, supra, and in addition to that tells the jury that, if she was injured as the result of the scuffle, and not as a result of the negligence of the municipality, then there could be no verdict for the plaintiff.

It will be remembered that there is very slight evidence upon which the jury could have held that the protruding metal cuffs caused the child to stumble and fall into the ditch. The evidence was strong that she fell because of the contest between the two children as to which should have the possession of the scissors, and that she fell backwards as a result of the scissors passing in the scuffle from one of the children to the other. If the jury adopted that theory, which they had a right to do, then there was no liability on the part of the municipality, even though there might have been an obstruction in the sidewalk which could have been the cause of the injury, and which might have been negligence in a proper case.

In this case we think that it was a straight, square-cut issue of fact submitted to the jury, and we find no reversible error in the case. We add the statement that there is no room in this case for the application of the attractive nuisance doctrine.

Affirmed.