ILLINOIS CENT. R. Co. *v.* BLOODWORTH *et al.*

(Division A.   Jan. 9, 1933.)

[145 So. 333.   No. 30038.]

604

Chas. N. Burch, H. D. Minor, C. H. McKay, all of Memphis, Tennessee, W. E. Stone, John M. Kuykendall, both of Charleston, and May, Sanders, McLaurin & Byrd, of Jackson, for appellant.

Denman & Breland, of Sumner, **T. Webber Wilson**, of Laurel, **T. H. McElroy**, of Oxford, and **Roberson & Cook**, of Clarksdale, for appellees.

608

610

Argued orally by **Chas. M. Burch**, for appellant, and by **J. J. Breland** and **Sam Cook**, for appellees.

McGowen, J., delivered the opinion of the court.

For more than sixty years the Illinois Central Rail-. road Company has maintained an elevated bridge over and across its track on a public street of the city of Oxford passing through the campus of the state university.

This bridge, which is considerably narrower than the street, is one hundred fifty feet in length. There is a deep cut at this point, and the elevation of the bridge is in excess of fifty feet above the tracks of the railroad. The bridge has a designated roadway or driveway about seventeen feet wide, on each side of which is a walkway of concrete, about six feet in width, and built up above the driveway a height of six inches. At the extreme edge of each walkway, north and south, there is a guardrail, but there were no guardrails between the roadway for vehicles and the walkway for pedestrians. The corporate limits of Oxford extend west, to the west end of the bridge. A public highway extends west from the bridge through the grounds of the University.

On the driveway dirt and debris had accumulated, especially next to the walkway, carried there by vehicles and washed by rains, or a deposit of sand and gravel spilled while being hauled over the bridge. Witnesses varied in their statements; but it appears that the walkway was from two and three-fourths to four inches above the deposit of dirt and debris.

On September 14, 1929, about nine o'clock, P. M., the plaintiff's intestate, Miss Blanche Bloodworth, accompanied by Miss Crawford, was walking across the bridge along the walkway on the south side, going from the University on the west to the town on the east. When about midway of the bridge, Miss Bloodworth next to the guardrail and Miss Crawford next to the curb or driveway, they were struck by a Chevrolet car. Miss Bloodworth was hurled through or over the guardrail

on the south side of the walk, to the ground, fifty or sixty feet below, sustaining severe injuries, from the effects of which she died at nine o'clock the following morning, after suffering intensely.

Miss Bloodworth was an outstanding student at the University, a young woman of brilliant attainments as a student, as an athlete, and socially. She also worked in a bank in Oxford.

The immediate facts in regard to the injury are about as follows: Two automobiles, a Ford and a Chevrolet, were racing on University avenue, traveling west, and came on the bridge at a terrific rate of speed, estimated to have been from fifty to sixty miles an hour. The Ford was slightly in advance and passed without mishap. When the Chevrolet reached the eastern approach to the bridge, it struck an iron water main with such force that the main burst, and also the tire of the car; the car plunged from the south side of the bridge to the north side, back across the driveway and the south walk to the guardrail, loosening some of the upright pieces thereof, and hurled Miss Bloodworth, who was in its path, to the ground below. The Chevrolet was occupied by two negroes, one of whom was driving, and three white men, one, Van East, in control of the car and its driver, was in an intoxicated condition.

The railroad had, on occasions prior to this time, caused the bridge to be cleared of debris and dirt, and soon after Miss Bloodworth was killed it again cleared the bridge.

There was no guardrail along and between the walkway and the driveway, nor were there such guardrails on the streets of the city of Oxford. No accident had occurred on this bridge before this time within the knowledge of several resident witnesses. The outer guardrails withstood the onset of the Chevrolet motor car and did not fall to the depth below. Whether the dust

and gravel on the driveway was loose or packed does not appear. The bridge was generally safe, strong, and in good repair. The Chevrolet car left the driveway and went upon the walkway south, approximately at right angles, when it was precipitated against the young women thereon, but was stopped by the outer guardrail.

On these facts the parents, brothers, and sisters of Miss Bloodworth brought an action for damages against Van East and the Illinois Central Railroad Company, charging the latter (1) with negligence generally in the construction and maintenance of the bridge; (2) that the railroad company was negligent in permitting the driveway of the bridge to remain for a long time covered with dirt and debris; and (3) in not providing and maintaining a guardrail between the walkway and the driveway for the protection of pedestrians.

The railroad company pleaded the general issue, and gave notice of special matter thereunder, the gist of which was to the effect that the injury to Miss Bloodworth was proximately and solely caused by the reckless and unlawful manner in which the Chevrolet car was driven against her; and that the bridge was constructed and maintained in a safe and suitable manner.

The case was submitted to a jury on instructions, and the result was a verdict and judgment against the Illinois Central Railroad Company for thirty-five thousand dollars, from which judgment an appeal is prosecuted here.

On a former trial of the case there was a verdict and judgment against East for twenty-five thousand dollars, which, upon an appeal to this court, was affirmed. East v. Bloodworth (Miss.), 132 So. 345. On that trial the jury disagreed as to the railroad company.

In the case at bar, the question of negligence as to guardrails and permitting an accumulation of dirt and debris on the bridge was submitted to the jury.

The question at once arises: Had the railroad company discharged its duty to Miss Bloodworth in the

matter of the construction and maintenance of this bridge? Was it guilty of actionable negligence which proximately caused or concurrently contributed to, her injury and death?

This bridge was constructed, and is maintained, by force of a statute now to be found in section 6127, Code of 1930, as follows: "It shall be the duty of the company to erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad." Its duty in the case at bar, as defined by the statute, is to keep the bridge in order. The statutes existing at the time of this accident did not require sidewalks for pedestrians, nor is there such a statute now. At that time bannisters were not required by statute to be placed on either side of bridges. Bannisters are now required on the outer edge of the sides of bridges. Section 6311, Code of 1930.

This bridge was within the municipality of Oxford, and the duty of the railroad company as to its care for pedestrians was the same as that imposed by law upon municipalities in this state; which duty is thus stated in the case of McComb City v. Hayman, 124 Miss. 525, 87 So. 11, 12: "To use ordinary care to keep them in a reasonably safe condition for persons using ordinary care and prudence." See, also, Nesbitt v. City of Greenville, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521; Butler v. Town of Oxford, 69 Miss. 618, 13 So. 626; Walker v. City of Vicksburg, 71 Miss. 899, 15 So. 132; City of Meridian v. Crook, 109 Miss. 700, 69 So. 182, L. R. A. 1916A, 482; Gulfport & Mississippi Coast Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308; Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594; City of Vicksburg v. Hennessy, 54 Miss. 391, 28 Am. Rep. 354; Higginbottom v. Burnsville, 113 Miss. 219, 74 So. 133; Maxedon v. City of Corinth, 155 Miss. 588, 124 So. 795; Dent v. Town of Mendenhall, 139 Miss. 271, 104 So. 82; Saxon v. Town

of Houlka, 107 Miss. 161, 65 So. 124; Jordan v. City of Lexington, 133 Miss. 440, 97 So. 758.

It will be observed that, while the University is open for students, the traffic by motor vehicles and pedestrians is very heavy; and the appellant apparently noted this fact, and provided a bridge twenty-nine feet in width—seventeen feet thereof for vehicles, and six feet on each outer side for pedestrians. There was the further notable precaution that the walkways were of concrete, the driveway of wooden blocks, creating a clear line of demarcation for the two classes of travelers. As before stated, the walkways were constructed six inches above the level of the driveway, and usually maintained three and one-half to four inches higher than the driveway. This accident was unusual. Men were racing automobiles on the public city streets and across this bridge, traveling at a reckless, dangerous, and unlawful rate of speed—fifty or sixty miles an hour—when the speed limit on that bridge was ten miles per hour. See section 6682, Hemingway's Code 1927 (not in Code of 1930). They were racing motor cars while intoxicated. In that situation, striking and bursting the water main, and causing a "blow-out" of the automobile tires, which resulted in the performance of the car, veering to the north side, thence back to the south, and against the iron railing—was all out of the ordinary.

Although in recent years numerous bridges have been constructed and maintained in this state, by the state and federal governments, in joint supervision, we take judicial notice of the fact that they are not usually constructed or maintained with guardrails for the protection of pedestrians, nor are they to be found with the protection described in the case before us.

Although municipalities are areas of the government, in a sense, yet it is quite well settled that, exercising jurisdiction as they do over streets and bridges as a part

thereof, they may be held liable for negligence, whether willful or an omission to perform a duty. Bell v. City of West Point, 51 Miss. 262. But as in other cases of negligence, the injury must be the natural and probable consequence of the alleged act of negligence, such consequence as a prudent person might and should reasonably foresee, under the circumstances. One might be guilty of negligence, though he might not be actually aware of the consequence of his act or failure to act.

There is ample authority in respect to the duty of bridge owners and municipalities to maintain guardrails on the outer sides of bridges, where clearly necessary for the protection of travelers, and a failure to so provide guardrails is held to be negligence, with consequent liability to the person injured because of such negligence. See 9 C. J. pp. 477, 478, section 79 and notes; 4 R. C. L. 217. However, these texts and authorities point to guardrails on the sides of bridges.

The obligation on the railroad, under the statute, is to keep its bridges "in order;" not such order as when first constructed, but in such order as will render them reasonably safe for traffic, and for such uses as may be reasonably necessary for persons using reasonable care in crossing. Obviously, changing conditions in traffic will render necessary changes in bridges to keep them in order.

Appellees cite the general rule as to the concurring negligence of two or more parties, which is too well settled in this state to evoke discussion. They cite one case which, to some extent, tends to uphold their contention that the bridge was negligently constructed or maintained, to-wit, St. Louis Bridge Co. v. Miller, 138 Ill. 465, 28 N. E. 1091, 1094. Mrs. Miller was injured while walking along one of the approaches to the bridge across the Mississippi river at East St. Louis. There was a wagon road eighteen or twenty feet wide at that point, and on

each side was a foot path six or seven feet wide. There was no guardrail or barrier of any kind between the foot path and the carriage way. While Mrs. Miller was thus crossing the bridge, a drove of cattle was also crossing, and becoming frightened, went upon the foot path, and mashed her violently against the outer railing, although she was exercising ordinary care. The bridge was a toll bridge, and Mrs. Miller had paid the toll charges. The court there held that parties authorized to construct bridges, and charge for crossing thereon, where held to a higher degree of diligence in caring for the safety of passengers on the bridge, than where the bridge was used gratuitously. It was contended by the bridge company that, since neither the law nor its charter required it to construct handrails, no duty rested upon it so to do. In reply thereto the court said: "The legal duty of the bridge company was to exercise reasonable and ordinary care and prudence in the construction, management, and supervision of its bridge for the safety and protection of persons using it, and it was its duty to make reasonable provisions for the prevention of injuries from causes likely to arise in the ordinary use of the bridge, although no specific expedient for the prevention of such injuries may have been indicated or commanded, either by the law or the defendant's charter; and if the construction of a railing or other barrier between the carriage-road and footway was the most obvious and appropriate expedient for preventing injuries which, in the ordinary use of the bridge, were likely to happen to foot-passengers, it was its duty to construct and maintain such railings or other barriers."

Precaution is a duty only so far as there is reason for apprehension. Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable, or extra-ordinary occurrence, though such happening is within the range of

possibilities. Care or foresight as to the probable effect of an act is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations. Probability arises in the law of negligence when viewed from the standpoint of the judgment of a reasonably prudent man, as a reasonable thing to be expected. Remote possibilities do not constitute negligence from the judicial standpoint.

When we consider all the circumstances, the heavy traffic, motor vehicles, and pedestrians, connecting the University with Oxford, the walkway, the driveway, and the manner of this young woman's untimely death, there is no single fact in evidence here which would put the appellant upon notice of a probability of injury to pedestrians.

We are applying familiar principles of law to this case. The Miller Case is essentially different. The bridge company operated the bridge for hire as a private corporation, controlled the traffic thereon, and owed a higher duty to its passengers than a municipality does to the general public in the maintenance of its streets and bridges. The bridge was not built for the lawbreaker to race upon, but for normal, practical use as a street; and those in control of, and responsible for, streets and bridges are not insurers against unforseen, unlawful drivers of motor vehicles. Under the circumstances here, the injury to plaintiff's intestate was not likely, nor reasonably probable. Considering the construction and maintenance of the bridge, with marked segregation of the walkway from the driveway, with accumulations of dirt, whether loose or packed we do not know, we dare say, with rare exception, there was as safe provision for the protection of pedestrians as can be found on any highway or street within the borders of the state. The appellant had a right to presume that its bridge would be used in a lawful manner.

It was well nigh suicidal for a driver of a heavy motor vehicle to steer onto this sidewalk with the outer guardrail only as a protection against death or serious bodily harm to its occupant. A sane man would not take that risk.

There being no statute requiring a separate bridge for pedestrians, and none requiring guardrails between the walkway and the driveway in this case, the appellant performed its duty and kept the bridge in a reasonably safe condition for persons using ordinary care and prudence in traveling thereon. The railroad company had no control of the traffic over this bridge. Under these circumstances the appellant may not be charged with negligence in respect thereto.

Reversed and judgment here for the appellant.